Melanie RHEA, Petitioner

v.

DESIGNMARK SERVICE, INC., Respondent.

No. 06–AA–1014.

District of Columbia Court of Appeals.

Submitted Jan. 10, 2008.

Decided Feb. 21, 2008.

Melanie Rhea, filed a brief pro se.

No appearance for respondent.

Before REID and GLICKMAN, Associate Judges, and SCHWELB, Senior Judge.

SCHWELB, Senior Judge:

Melanie Rhea asks us to review a decision of the Office of Administrative Hearings (OAH) denying her claim for unemployment compensation. The OAH ruled that it lacked jurisdiction because Ms. Rhea's administrative appeal from an adverse decision by a claims examiner of the District of Columbia Department of Employment Services (DOES) was filed one day late. We vacate the decision of the OAH and remand the case to that Office for further proceedings.

## I.

On May 14, 2006, Ms. Rhea, who had been employed by Designmark Services, Inc. for fourteen years, was discharged by her employer, allegedly for "stamping unauthorized checks." Ms. Rhea applied for unemployment compensation, claiming that she had been authorized to take the actions for which she was discharged. On June 9, 2006, a DOES claims examiner denied Ms. Rhea's claim on the grounds that she had been discharged for gross misconduct and that she was therefore ineligible for unemployment benefits.[1] On June 20, 2006, Ms. Rhea filed an appeal with the OAH.

On July 21, 2006 Ms. Rhea appeared for a hearing before an Administrative Law Judge (ALJ) of the (OAH). No representative of the employer appeared. The ALJ received brief testimony from Ms. Rhea on the question whether her appeal was timely, and she then took the case under advisement.[2]

---

1. Specifically, the claims examiner wrote:
   You were discharged from your job with your most recent employer due to unauthorized use of a signature stamp and checks. These checks were not authorized by the owner of the company. Therefore, it is considered that you were discharged for misconduct occurring in your most recent work. Gross misconduct has been established.

2. At the hearing, the relevant questioning, in its entirety, was as follows:

   JUDGE NASH: All right, Ms. Rhea. On the issue of timeliness, do you have something or anything you would like to tell me about that?
   THE WITNESS: Yes ma'am. I haven't received anything through the mail. So I went to the Department of Human Services myself, to see what was going on, why I haven't received anything. She said they would mail it out again, and that's when I got it, and I did the appeal.
   JUDGE NASH: You said Department of Human Services, did you mean . . .

On July 25, 2006, the ALJ issued an order dismissing Ms. Rhea's appeal as untimely. The ALJ so ruled because the appeal was filed on June 20, 2006, eleven days after the certificate of service contained in the claims examiner's decision, rather than within ten days of mailing, as required by D.C.Code § 51–111(b) (2001). The ALJ wrote, (not quite accurately, see page ——, *infra*), that

> [t]he Determination in this case contains a certificate of service that states a copy was mailed "to Appellant/Claimant and Appellee/Employer on June 9, 2006." Therefore, the parties had until Monday, June 19, 2006 (ten calendar days) to file an appeal.

The ALJ concluded that

> Appellant Rhea's appeal was untimely filed. Appellant testified that she did not receive anything in the mail regarding her unemployment claim, so she went to a Department of Human Services office on Alabama Avenue to inquire. She asserted that she was told that the Determination would be reissued. She contended that when she received the reissued copy in the mail, she

filed her appeal by facsimile transmission. Appellant provided no envelope or other documentation corroborating her testimony.[3]

Ms. Rhea filed a motion for reconsideration, which the ALJ denied on August 17, 2006. Ms. Rhea then petitioned this court to review the decision of the OAH. We vacate that decision and remand for further proceedings consistent with this opinion.

## II.

■ Ms. Rhea has appeared *pro se* before the DOES and before the OAH, and she continues to represent herself in this court.[4] Although she makes some other, legally unpersuasive, arguments in her brief, Ms. Rhea's key contention is that she did not receive the original decision by the claims examiner, that she arranged with a DOES representative to have the decision reissued, that she received the reissued decision on June 19, 2006, that she faxed her appeal on the following day, and that her appeal was therefore timely.[5] The employer has not filed a brief in this court.

---

THE WITNESS: Right: I went to the Department on Alabama Avenue. I went there. I told them I had not received anything, because they said I had to contact them.

I went to them and told them I hadn't received anything yet. She said that they will reissue again, and I asked her how can I go about it, and that's how she gave me the fax number and said I can fax it.

JUDGE NASH: So the copy of the claims determination you received, you did receive in the mail?

THE WITNESS: Yes, eventually I did. She said they will reissue it, and they did reissue it and I—then, they gave me the fax number so I can fax the appeal to them.

JUDGE NASH: All right. Anything else that you'd like to tell me?

THE WITNESS: No ma'am.

The ALJ did not pose any question to Ms. Rhea regarding the time that elapsed between

Ms. Rhea's receipt of the determination and the filing of her appeal.

3. The ALJ wrote that Ms. Rhea claimed to have gone to a DOES office on Alabama Avenue, that there was no such office on Alabama Avenue, and that therefore "I cannot credit appellant's explanation for why she did not file timely." However, in her motion for reconsideration, Ms. Rhea explained (correctly) that there is a DOES office on Naylor Road, which is "off Alabama Avenue," and that she did visit that office.

4. On October 2, 2006, this court granted Ms. Rhea's motion to proceed *in forma pauperis*.

5. During her testimony before the ALJ, Ms. Rhea was not asked, nor did she volunteer, on what date she received the decision.

In dismissing Ms. Rhea's appeal to the OAH as untimely, the ALJ relied on the certificate of service which was contained in the claims examiner's decision and on the "rebuttable presumption that [mail] which [has] been correctly addressed, stamped and mailed [has] been received by the addressee." *Brown v. Kone, Inc.*, 841 A.2d 331, 334 (D.C.2004) (citations omitted). The ALJ noted, in particular, that "[i]n this jurisdiction, the law presumes that a certificate of service constitutes evidence of the mailing date and address, unless the certification is rebutted by reliable evidence." [6]

In Ms. Rhea's case, the claims examiner's certificate of service reads as follows:

I certify that a copy of this document was mailed to the claimant/employer at the above address on 6/9/2006.

In *Kidd Int'l Home Care, Inc. v. Prince*, 917 A.2d 1083, 1085 (D.C.2007) we described an essentially identical certificate of service as "confusing and, in our view, inadequate." We noted, in language equally applicable to this case, that

[t]he Certificate ... states: "I certify that a copy of this document was mailed to the claimant/employer named herein at the above address on 12/7/04." There are two separate addresses on the form,

one for Ms. Prince (the claimant) and one for Kidd (the employer). Moreover, the use of the slash in "claimant/employer" implies that the employer is the claimant. To avoid confusion, it would be advisable to use a more precise Certificate of Service in the future.

*Id.* at n. 1.[7] Read literally, the certificate of service means that a single copy of the examiner's decision was sent only to a single address. That address in the present case could have been either the claimant's or the employer's, and no differentiation is made in the certificate between the two parties. Although it is unlikely that the literal meaning of the certificate of service is what the claims examiner meant to convey,[8] the certificate is less than a paragon of accuracy or reliability.[9]

In the present case, the OAH held that Ms. Rhea was a single day late in filing her appeal from the claims examiner's determination. If the certificate of service was off by one day, to Ms. Rhea's detriment, with respect to the date of mailing— if, in other words, the order was mailed to her on June 10 rather than on June 9— then her appeal to the OAH was timely. The record also contains no description of agency procedures from which we could be confident that no such one-day error was

---

**6.** The ALJ relied, *inter alia*, on *District of Columbia Pub. Employee Relations Bd. v. District of Columbia Metro. Police Dep't*, 593 A.2d 641, 643 (D.C.1991).

**7.** In fairness to the agency and to the OAH, we note that *Kidd Int'l* was decided after the claims examiner's determination in this case and also after the OAH's decision.

**8.** We note that the ALJ's description of the certificate of service eliminated the certificate's illogical and self-contradictory character.

**9.** The certificate of service refers to the mailing of only a single copy of the claims examiner's determination. If that copy was sent to

the employer, this would explain, and would be consistent with, Ms. Rhea's claim that she did not receive the initial mailing, and that she only received a reissued copy after contacting the agency. In some measure, this scenario would also support Ms. Rhea's assertion that she filed her appeal by fax within a day of the late receipt. Further, if the decision was initially sent only to the employer, if the error was subsequently discovered, and if the determination was mailed to Ms. Rhea after that discovery, then that mailing would necessarily have been after June 9. In either of these concededly speculative eventualities, Ms. Rhea filed her appeal within the ten-day period specified in the statute.

made.[10] The record does not disclose whether, on June 9, the claims examiner's determination was placed in a DOES outbox from which mail is collected, or whether it was physically placed in the United States Mail. Further, the employer's failure to participate in the case, either before the OAH or in this court, is a factor that we may appropriately consider in our calculus. *See, e.g., Kidd Int'l,* 917 A.2d at 1087–88 (addressing claimant's failure to participate when a similar jurisdictional issue was raised, and discussing D.C.App. R. 31(c)); *Campos v. New England Oyster House,* 711 F.2d 158 (11th Cir.1983) (per curiam); *compare First Capitol Mortgage Corp. v. Talandis Constr. Corp.,* 63 Ill.2d 128, 345 N.E.2d 493, 494 (1976) ("[the] considered judgment of the trial court should not be set aside without some consideration of the merits of the appeal") *with Wailes v. Rocky Mountain Pre–Mix Concrete,* 783 P.2d 1138, 1138 n. 1 (Wyo. 1989) ("In sternest terms, we would warn that summary reversal without extended review could realistically be expected in future cases where an appellee does not file an appellate brief").

█ Although Ms. Rhea did preserve the claim that her appeal was timely, arguing that it was filed on the day after she received the claims examiner's determination, she did not raise, before the OAH or in this court, the confusing character of the certificate of service. We do not believe, however, that we are precluded from considering the inadequacy of the certificate simply because the *pro se* claimant failed

to address it. First, the employer, having failed to file a brief, waived its opportunity to be heard on the point, and thereby arguably subjected itself to the "waiver of the waiver" doctrine, *see In re T.L.,* 859 A.2d 1087, 1090 n. 6 (D.C.2004), although it may be stretching that principle to find a waiver of an objection to a claim of error that Ms. Rhea never made. But more significantly, the unemployment compensation statute is remedial in character, *see Wright v. District of Columbia Dep't of Employment Servs.,* 560 A.2d 509, 511 (D.C.1989), and it must be construed accordingly. In most instances, "[t]he wealthiest among us do not [seek unemployment compensation], and many complainants in cases brought under the Act are not affluent, nor are they in a position to afford to retain private counsel to conduct protracted proceedings before the [agency, the OAH], and the courts." *Goodman v. District of Columbia Rental Hous. Comm'n,* 573 A.2d 1293, 1299 (D.C. 1990). Thus, the Unemployment Compensation Act, like the Rental Housing Act, "relies largely on lay persons, operating without legal assistance, to initiate and litigate administrative and judicial proceedings." *Id.* In this case, as we have noted, Ms. Rhea is proceeding *pro se* and *in forma pauperis.*[11]

█ "Procedural technicalities are particularly inappropriate in such a statutory scheme." *Id.* (citations and internal brackets omitted). Therefore,

[a]lthough neither this court nor the Commission is authorized to overlook

---

10. In *Kidd Int'l,* 917 A.2d at 1086 n. 2, we declined to decide whether both a certificate of service and a description of procedures were required by our earlier decision in *Thomas v. District of Columbia Dep't of Employment Servs.,* 490 A.2d 1162, 1164 (D.C. 1985) (per curiam). Instead, we assumed, *arguendo,* that either a certification alone or a description alone was sufficient.

11. The transcript of the ALJ's brief examination of Ms. Rhea at the hearing reveals that no questions were asked that would be likely to elicit from a lay claimant the precise date on which she received the claims examiner's determination and the number of days thereafter that she filed her appeal.

jurisdictional requirements in order to vindicate subjective notions of "fairness," it is appropriate for this court, in resolving procedural issues with respect to which reasonable people might differ, to keep in mind the remedial character of the statute and the important role which lay litigants play in its enforcement.

*Id.·*

In light of these principles, we do not believe that Ms. Rhea should be subjected to the rigors of the "plain error" rule, and we take note of the shortcomings of the certificate of service even though Ms. Rhea, representing herself, failed to bring them to our attention. Here the OAH, quite properly, inquired *sua sponte* whether it had jurisdiction over Ms. Rhea's claim. The employer thus received the benefit of the OAH's consideration without lifting a finger in support of the employer's own legal interest.[12] Under these circumstances, in determining whether the OAH had jurisdiction of Ms. Rhea's appeal, it is not unfair for the court to include in its calculus possible grounds supporting exercise of jurisdiction by the OAH which were not presented by the *pro se* claimant. *See Goodman,* 573 A.2d at 1301 & n. 1, and authorities there cited.

### III.

In light of the questionable certificate of service, the limited questioning of Ms. Rhea at the hearing, the lack of participation of the employer in litigating the jurisdictional issue or any other aspect of the case, and the lack of any explanation of DOES' mailing procedures, we are not satisfied, on the basis of the present record, that Ms. Rhea's appeal to the OAH, which appeal the OAH found to have been filed

only a single day late, was in fact untimely. On the contrary, we deem it quite possible that a one-day error to Ms. Rhea's detriment may have been made. We therefore vacate the decision of the OAH and remand the case to that Office for further proceedings consistent with this opinion. On remand, in light of the particular circumstances of this case, including the defective certificate of service and the finding of lateness only by one day, the dismissal of Ms. Rhea's appeal may stand only if additional proof, beyond the certificate itself, establishes that the appeal was in fact untimely.

*So ordered.*

---

12. In fact, the ALJ explicitly recognized that if the appeal was timely, Ms. Rhea would be entitled to unemployment compensation be-

cause the employer, having failed to appear, could not prove its allegations of misconduct on Ms. Rhea's part.