**Dion L. PRIME, Petitioner,**

v.

**DISTRICT OF COLUMBIA DE-PARTMENT OF PUBLIC WORKS, Respondent.**

**No. 07–AA–1020.**

District of Columbia Court of Appeals.

Submitted July 22, 2008.

Decided Aug. 28, 2008.

Dion L. Prime, pro se.

Peter J. Nickles, Interim Attorney General for the District of Columbia, Todd S. Kim, Solicitor General, Donna M. Murasky, Deputy Solicitor General, and Stacy L. Anderson, Assistant Solicitor General, filed a brief for respondent.

Before GLICKMAN, Associate Judge, FARRELL, Associate Judge, Retired, and SCHWELB, Senior Judge.

FARRELL, Associate Judge, Retired:

The Department of Public Works (DPW) served petitioner Dion Prime with notices of violation after an inspector observed large amounts of loose trash in an alley behind property petitioner owned at 4633 Hillside Road, S.E. Petitioner denied the violations and a hearing was set for July 20, 2007 at 10:30 a.m. When he failed to appear at the hearing, an Administrative Law Judge (ALJ) of the Office of Administrative Hearings (OAH) conducted the hearing *ex parte* and, after receiving testimony and exhibits, issued an order finding petitioner liable for two of the violations and imposing a fine of $150 for each violation, plus an additional penalty of $600 for failure to appear. *Cf. Washington v. District of Columbia Dep't of Public Works*, No. 06–AA–315, 954 A.2d 945, 2008 D.C.App. Lexis 329 (D.C. July 24, 2008) (addressing penalty for late response to notice of violation). Petitioner moved for a new hearing, which the ALJ denied.[1] He now asserts that the ALJ erred in denying the motion for a new hearing and in finding him liable for the violations. We affirm.

---

1. Petitioner's motion for a new hearing was filed on August 29, 2007, before issuance of the order on the merits on September 4, 2007. The ALJ, however, did not receive the motion until after he issued the order. The ALJ treated the motion as a timely motion for a new trial pursuant to 1 DCMR § 2831 (2001) and issued a separate order denying the motion.

In his motion for a new hearing and subsequent motion to stay the judgment,[2] petitioner asserted as grounds for his non-appearance that he had learned the day before the hearing that he was scheduled to evict a tenant of 4633 Hillside Road at 9:00 a.m. on the hearing date.[3] He did not contact the OAH that day to learn the feasibility of a postponement of the hearing or in what manner to request one. Instead, because the hearing was not scheduled until 10:30 a.m., he was confident that he would be able to complete the eviction the next morning and still attend the hearing. On the morning of the hearing, however, a United States Marshal, who was required to be present for the eviction, arrived late. Petitioner called the OAH to "explain [his] situation and to see if the [ALJ] would give [him] more time to arrive for the hearing," but was told that it was too late to stop the hearing. (App. at 32). Petitioner does not contend that OAH erred in conducting the hearing in his absence.[4] Rather, he argues that these circumstances constituted good cause for his failing to appear at the hearing, and that the ALJ abused his discretion in not granting him a new hearing.

■ OAH may grant a new hearing for any of the reasons a trial court may grant a new trial. 1 DCMR § 2831.1 (2001) ("A new trial [before OAH] may be granted … for any of the reasons for which rehearings have … been granted in the courts of the United States or of the District of Columbia."); *Graves v. Nationwide Mut. Ins. Co.*, 151 A.2d 258, 261 (D.C.1959) ("A motion for rehearing is in all respects the same as a motion for a new trial."). Thus, a new hearing may be granted where the hearing was "unfair" or where necessary to " 'prevent injustice.' " *Bell v. Westinghouse Elec. Corp.*, 483 A.2d 324, 327 (D.C.1984) (quoting 11 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 2805, at 38 (1978)). We review denial of a motion for a new hearing for abuse of discretion. *See United Mine Workers v. Moore*, 717 A.2d 332, 337 (D.C.1998).

■ There was no abuse of discretion here. The ALJ may conduct a hearing in a party's absence when the party fails to appear. *See* D.C.Code § 8–805(f) (2001). Moreover, if the party fails to appear without having been granted a continuance and without good cause, the ALJ may grant a default judgment and impose a penalty equal to twice the civil fine, D.C.Code § 8–805(e); 24 DCMR §§ 1307.5, 1307.6 (1996), a sanction expressly mentioned in the notice of hearing. These rules reflect OAH's determination that "parties … are strictly obliged to appear in timely fashion on the day of [a hearing]" and that "[a] weighty

2. Petitioner filed the motion for a stay on September 17, 2007, after receiving the ALJ's order on the merits. Petitioner does not challenge the ALJ's denial of the stay before this court.

3. Petitioner alleged that "[a]s a standard procedure[ ]" the Landlord and Tenant Branch of the Superior Court provided only twenty-four hours notice of a scheduled eviction. (App. at 32).

4. At the hearing, the ALJ stated that he had been informed of a phone call from petitioner to the OAH that morning reporting that he was "having problems getting [t]here" (App.

at 12). That phone call, however, besides coming the day after petitioner learned of the eviction, did not constitute a motion for a continuance under the rules. *See* 1 DCMR §§ 2812.1 (motions must be in writing), and 2812.5 (party must seek consent of other parties prior to filing any non-dispositive motion). Even if an oral motion might have sufficed, a phone call to the OAH shortly before the hearing was not a substitute for a notification well enough in advance and in enough detail to allow the ALJ fairly to evaluate it. The ALJ was therefore authorized to proceed with the hearing despite petitioner's absence. *See* D.C.Code § 8–805(f) (2001).

and convincing justification is required to excuse failure to do so." *Milton Props., Inc. v. Newby,* 456 A.2d 349, 353 (D.C. 1983) (interpreting Superior Court Civil Rule 39–I, which permits a plaintiff to proceed to trial where defendant fails to appear). The provisions for compounded penalties, in particular, reflect the seriousness with which the legislature meant to enforce compliance with the statutory procedures.

Petitioner asserts that the Marshal's late arrival to conduct the eviction caused him to miss the hearing. But, while circumstances outside a party's control may justify relief from the consequences of the party's failure to appear, *see Frausto v. United States Dep't of Commerce,* 926 A.2d 151, 156 (D.C.2007) (holding that ALJ abused discretion by failing to consider whether petitioner's displacement from her home by a fire excused failure to attend hearing); *King v. District of Columbia Water & Sewer Auth.,* 803 A.2d 966, 969 (D.C.2002) (holding that agency erred in denying continuance after hearing where combination of weather and injury prevented petitioner from attending hearing), petitioner's failure to appear was not caused solely by the Marshal. Petitioner admitted that he knew of the potential conflict the day before the hearing, but he took no action at that time because he believed the eviction would be completed in time for him to attend the hearing. The ALJ was unpersuaded by this argument, noting that "even if the Marshal had not been late," it would be "difficult to believe that [petitioner] could attend a tenant eviction at 9:00 a.m. in one part of town and an administrative hearing at 10:30 a.m. in another part of the District" (App. at 26). Petitioner's mistaken belief that he could make it to the hearing did not justify his failure either to appear or to make a timely request for a postponement. *See Gardner v. District of Columbia,* 736 A.2d 1012,

1018 (D.C.1999) (holding agency did not err in denying request for reconsideration where petitioner "gave no reason for his absence other than his own mistake" as to the hearing date).

In response to the ALJ's point that he had not moved for a continuance as required, petitioner asserts that he did not do so when he learned of the eviction because there was insufficient time to prepare a motion. He was only required, however, to *attempt* to contact the other party and to file a written request for postponement stating that he had tried to do so, which he could have done the day before the hearing. Moreover, as explained, he did not attempt even orally to notify the OAH in timely fashion of the eviction and seek postponement. His failure to alert the OAH to the potential conflict was thus properly weighed against him. *See King,* 803 A.2d at 968 (including "the part[y's] diligence in seeking relief" among factors relevant in determining whether good cause exists for a continuance); *Milton Props., Inc.,* 456 A.2d at 352–53 (noting that trial court, within its discretion, could have rejected motion for reconsideration where landlord failed to appear at trial and failed to seek continuance even though both of landlord's counsel knew the day before trial that one was sick and the other was scheduled to appear in court in Maryland); *Fowler v. Safeway Stores, Inc.,* 156 A.2d 682, 684–85 (D.C. 1959) (holding that trial court did not abuse discretion in refusing to set aside dismissal where attorney failed to notify court until morning of trial that he had a conflicting appellate case). Furthermore, the ALJ considered petitioner's call to OAH on the morning of the hearing and found that it did not justify his failure to appear given his opportunity to notify OAH earlier. *Cf. Frausto,* 926 A.2d at 155 (finding that ALJ abused discretion in fail-

ing to address petitioner's argument that she called clerk's office on the morning of the hearing).

The ALJ also properly considered the prejudice to the government, whose inspector appeared and presented the government's evidence at the hearing. *See King*, 803 A.2d at 968, 969–70. While petitioner was also prejudiced, arguably, in that he was precluded from presenting evidence, he waived this right by failing to appear without cause. *See Gardner*, 736 A.2d at 1018. Moreover, he did not proffer in either of his motions evidence he would have presented at trial to support his denial of the violations. *Cf.* 24 DCMR § 1307.8 (application to vacate default judgment must include defense to the violations). Thus, the ALJ was unable to assess whether he suffered any particularized prejudice. In these circumstances, he did not abuse his discretion in ruling that petitioner lacked good cause for failing to appear at the hearing and, accordingly, that a new hearing was not warranted.

█ As the dissent points out, petitioner's is not an unsympathetic case. The scheduled eviction was obviously a matter of importance to him, and the ALJ did not find that he willfully or deliberately disregarded his obligation to appear at the hearing. Petitioner nevertheless appeared too late, for reasons the ALJ found insufficient and without having availed himself of the opportunity he had to seek continuance of the proceedings. Administrative tribunals "must be, and are, given discretion in the procedural decisions made in carrying out their statutory mandate." *Ammerman v. District of Columbia Rental Accommodations Comm'n*, 375 A.2d 1060, 1063 (D.C.1977). We decline to impose on ALJs what amounts to a duty of forbearance, shaped by "equit[able]" concerns and

a need to avoid undue "harsh[ness]," *post* at 183, 186–87, toward pro se respondents in these civil infraction cases. At the least, in what all members of the division agree is a "close" case, *id.* at 183, 186, we cannot find an abuse of discretion by the ALJ in denying petitioner's request for a new hearing.

█ Finally, petitioner argues that the ALJ erred in determining that he violated 21 DCMR § 700.3 (1998), requiring that "solid wastes ... be stored and containerized for collection in a manner that will not provide food, harborage, or breeding places for insects or rodents, or create a nuisance or fire hazard," and section 707.3, requiring that a sufficient number of containers be provided to store waste during the usual interval between collections. The ALJ found that on November 29, 2006, the DPW inspector observed "numerous plastic bags filled with trash and cardboard boxes ... piled approximately four feet high, and loose pieces of debris ... strewn on the ground near the trash receptacle" (Sept. 4, 2006, Order at 3), and that the lone container present was not large enough to contain the quantity of trash. These findings were supported by substantial evidence, including a photograph taken by the inspector and the inspector's testimony that the photograph represented the conditions in the alley behind 4633 Hillside Road. Based on the evidence presented at the hearing, the ALJ did not err in concluding that petitioner was liable for the two violations. *See Rodriguez v. Filene's Basement, Inc.*, 905 A.2d 177, 180 (D.C.2006) ("This court must affirm an OAH decision when (1) OAH made findings of fact on each materially contested issue of fact, (2) substantial evidence supports each finding, and (3) OAH's conclusions flow rationally from its findings of fact.").[5] Petitioner urges us to

---

5. The ALJ dismissed the third notice of viola-

tion, which alleged that petitioner had depos-

consider new evidence included in an Appendix to his brief, which he argues demonstrates that evidence presented at the hearing was unreliable. But because petitioner waived his right to present the evidence at the hearing, as set forth above, and failed otherwise to present it to OAH, we will not consider it in our review. *See Cooper v. District of Columbia Dep't of Employment Servs.,* 588 A.2d 1172, 1176 (D.C.1991).[6]

*Affirmed.*

SCHWELB, Senior Judge, dissenting:

This is a case in which, in my judgment, the equities strongly favor the petitioner. As my colleagues in the majority acknowledge, "petitioner's is not an unsympathetic case." The substantially more difficult issue is whether the Administrative Law Judge (ALJ) of the Office of Administrative Hearings (OAH) abused his discretion in denying the petitioner's motion for a new hearing. Although, given our deferential standard of review, the question is a close one as to which reasonable people might (and do) differ, I would answer it in the affirmative.

## I.

I begin by setting forth what I take to be the petitioner's perspective on this dispute. On July 20, 2007, Dion Prime found himself between a rock and a hard place. He learned that morning that the United States Marshal's office had scheduled the eviction of one of Prime's tenants in southeast Washington, D.C. for 9:00 A.M. on the following day. The OAH had previously scheduled a hearing in the present matter before an ALJ for 10:30 A.M. on July 30, just 1½ hours after the eviction was to begin. Prime thus faced the likely prospect of having to be in two places at the same time and of facing untoward consequences no matter which location he chose.

What was Prime to do? On the one hand, if he postponed the eviction, it might not be rescheduled for weeks or months, and this would prevent him, for an indefinite period, from securing a paying tenant for the premises. On the other hand, although Prime could theoretically have attempted to obtain a continuance of the proceedings before the OAH by requesting the DPW's consent and filing a written motion, he apprehended (not at all unreasonably) that such a request would be rejected as coming too late. Therefore, if he did not postpone the eviction, the hearing before the OAH might (and in fact did) go on without him.

According to Prime, his dilemma was compounded by the fact that he had previously scheduled meetings for much of July 19. As a non-lawyer[1] involved in two sepa-

---

ited refuse on public space, in violation of 24 DCMR § 1000.1 (1996), on the grounds that DPW failed to demonstrate that petitioner himself had placed the trash in the alley. Thus, we are confident that the ALJ considered each of the violations carefully despite petitioner's failure to appear at the hearing.

**6.** Petitioner also asserts in his brief that he contacted the "City Wide Call Center" after receiving the notices of violation and was initially told that the trash would be moved by others and that he would not be responsible. Aside from the fact that this information does not appear in the record below, it is irrelevant to this petition. He does not assert that the

erroneous information in any way lulled him into believing he was not required to appear for the hearing. His call to OAH on the morning of the hearing and subsequent filings demonstrate that he was aware that he was required to appear. Furthermore, the ALJ imposed fines only for the violations on November 29, 2006, and did not order petitioner to pay abatement costs. Thus, any misinformation provided by the City Wide Call Center did not result in prejudice to him.

**1.** There is no indication in the record that Prime has any legal training.

rate legal proceedings, Prime had a very brief time to reflect upon what action he should take. Moreover, the procedure for drafting and filing a motion for a continuance probably was not a subject in which Prime had much expertise. At the very least, Prime's situation on July 19 must have been quite unnerving. It is easier today to judge Prime's actions (and inaction) in hindsight than it is to know what to do in a situation such as the one that suddenly confronted him on July 19, 2007.

Nevertheless, Prime thought that he had a way out of his quandary. He apparently believed—or, more probably, he persuaded himself to believe, perhaps by resort to a smidgen of wishful thinking—that he and his crew could complete the eviction and that he could still arrive on time for the OAH hearing. As events turned out, this hope did not materialize, but it is quite likely that no other solution would have both protected his interest in future collection of rent and his hope of participating in the hearing at the OAH.

Unfortunately, as my colleagues in the majority point out, Prime, who was representing himself, did not file a written motion for a continuance on July 19, nor did he seek or obtain DPW's consent to such a continuance. That is supposed to be the principal error or misjudgment that inexorably leads to the failure of Prime's contentions in this court. When the Deputy Marshal failed to arrive on time, however—a possibility Prime might have anticipated, for written materials that he had received from the United States Marshal's office revealed that Deputy Marshals' other duties sometimes result in their being late for evictions—Prime called the OAH, in advance of the start of the hearing, and he explained that he was having difficulty getting to the hearing on time and that he would be late. Although he apparently did not expressly request that the hearing be

briefly delayed, that was the obvious purpose of his call.

Nevertheless, at 11:03 A.M., the ALJ commenced the hearing. The ALJ stated on the record that Prime had telephoned and was "having problems getting here today," and he took note of this fact as establishing that Prime had notice of the hearing. The ALJ declined, however, to wait for Prime any longer. Rather, he decided to proceed in Prime's absence. The ALJ heard the testimony of the inspector, and he adjourned the hearing at 11:10 A.M. In a subsequent written order, the ALJ found Prime guilty of two counts of improper storage of waste and not guilty of a third similar count. Notwithstanding his acknowledgment at the hearing that Prime had called and indicated that he would be late, the ALJ wrote that Prime "failed to appear for the hearing and has not explained his failure to do so." The ALJ imposed civil fines of $150 on each of the substantive counts, and although Prime apparently arrived at the hearing site at 11:30 A.M., one hour after the scheduled time, and only twenty minutes after the end of the very brief hearing, and although Prime had called to disclose that he was late but presumably en route, the ALJ imposed the maximum civil fine of $600—double the amount of the fines for the substantive offenses—for failure to appear.

## II.

I turn now to the harder question whether, knowing all that he knew when he denied Prime's request for a new hearing, the ALJ abused his discretion by doing so. In my opinion, given Prime's obvious bona fides, his apparent lack of legal training, his genuine dilemma as to how to deal with his suddenly conflicting obligations, and the minimal time available to him to decide what to do, the ALJ's treat-

ment of the situation was unduly harsh, and the $600 fine for failure to appear—the statutory maximum—compounded the consequences of the harshness.

My colleagues in the majority place heavy emphasis on Prime's procedural miscues, some real, some perceived. They assert, for example, that Prime's July 20 call to the OAH, before the hearing began, did not constitute a request for a continuance, that such a request was required to be in writing, that Prime first had to seek DPW's consent, and that Prime had not complied with these requirements. Given the circumstances here, however, the July 20 call was obviously designed to be an emergency request not to begin the proceedings until Prime was able to get there, and it was thus an informal oral motion for a brief emergency continuance, in substance if not in name. By the morning of July 20, it was no longer possible to file a written motion or to secure the consent of the adversary.[2]

The majority also points out, as did the ALJ, that even if the Deputy Marshal had appeared on time at the site of the eviction, Prime's professed expectation that he could arrive at the OAH hearing on time was unrealistic, and that Prime therefore should have filed a motion for a continuance on July 19. In hindsight, I agree that it would certainly have been preferable for Prime to have done so, although he apprehended, not unreasonably, that it was already too late for that. My colleagues also fault Prime for not proffering a substantive defense in his motion for a new hearing.

But these errors or imperfections should, in my view, be placed in context. According to Prime, he did not learn of the potential conflict between his two obligations until the day before the scheduled hearings—a day he described as filled with meetings. Retaining counsel in a case in which the amount in controversy was so small was not a realistic option, so Prime had to rely, under considerable pressure, on his own best judgment. To preclude Prime from presenting his defense on the merits because he did not instantly recognize on July 19 that he had to drop everything to file a written motion, and because he subsequently did not know that he was supposed to proffer a substantive defense as a part of his motion for a new hearing, constitutes, at least in my view, an overly draconian sanction rather than a balanced and reasonable exercise of discretion. We have repeatedly held, in applying statutory regimens in which litigants ordinarily represent themselves, that a measure of leniency is appropriate with respect to procedural or other similar errors or miscues, that the contentions of the *pro se* litigants are to be generously construed, and that waivers of substantive claims or defenses are not to be lightly inferred. *See, e.g., Butler–Truesdale v. AIMCO Properties, L.L.C.,* 945 A.2d 1170 (D.C.2008); *Rhea v. Designmark Service, Inc.,* 942 A.2d 651, 655–56 (D.C.2008); *Goodman v. District of Columbia Rental Hous. Comm'n,* 573 A.2d 1293, 1299 (D.C.1990).

I appreciate that our standard of review of discretionary calls is deferential; that is what makes this case difficult. A forced regime of overlooking lateness on the part of litigants can undermine the authority of

---

**2.** I agree, based on the facts known to the ALJ at the time of the hearing, that although he could reasonably have waited a little longer in light of Prime's call, he did not abuse his discretion in proceeding in Prime's absence. The fact that the ALJ was aware of Prime's call, however, is relevant to the question whether a new hearing should have been granted when the ALJ subsequently learned of the unusual circumstances that led to Prime's failure to arrive on time.

courts and agencies to conduct and complete proceedings before them in timely fashion. I also acknowledge some abstract merit in the DPW's contention that if an evidentiary hearing had been granted, the inspector would have been required to appear for a second time, and that this would theoretically have prejudiced the DPW in some modest measure.[3] Nevertheless—and here, recognizing that this is a close call, I part company with my colleagues—I conclude that the denial of the motion for a new hearing, after the ALJ had proceeded with the case notwithstanding Mr. Prime's July 30 telephone call and had imposed the maximum sanction, was unreasonable and an abuse of discretion.

By the time he ruled, the ALJ had been apprised of Prime's dilemma, and he was aware of Prime's efforts to attend the hearing while at the same time trying to avoid the risk of losing substantial amounts in rent. The ALJ also knew that Prime was not a man who simply ignored his legal obligations; at worst, Prime had made a flawed decision at a time when news that the eviction would proceed on the following morning had placed him under considerable pressure. The ALJ wrote in his initial order signed on August 31, 2007 that Prime had provided no explanation for his failure to appear. But if this was an accurate assessment on August 31, 2007, notwithstanding Prime's call on July 20 to the OAH, it was no longer true on November 20, 2007, when the ALJ issued his order denying Prime's request for a new hearing.

I must of course, acknowledge that the amount of the fine for failure to appear is within statutory limits, that it has not been explicitly challenged, and that it is not in itself properly subject to judicial review. *See In re L.J.*, 546 A.2d 429, 434–35 (D.C. 1988). But viewing the case as a whole, the record shows that Prime did try to attend the hearing, that he notified the OAH that he was running late, that he arrived twenty minutes after the very brief hearing was over, and that he had a compelling reason not to postpone the eviction. Under these circumstances, the ALJ's disposition—the denial of an opportunity to defend on the merits, accompanied by a draconian monetary penalty—was severely out of line with the Mikado's "object all sublime" that "the punishment fit the crime."

### III.

Fundamentally, the ALJ, rightly or wrongly, initially treated the case as one in which Prime had inexcusably failed to show up and that Prime had provided no explanation. The ALJ subsequently learned, however, that at least if Prime's account was accurate, he had done his concededly imperfect best to carry out his obligations without potentially sacrificing several months of rent. At this point, the ALJ was on notice that the facts were evidently quite different from those that he had assumed in issuing his initial order. In my opinion, the ALJ's adherence to a harsh disposition based on his original assumptions, even after he had reason to believe that these assumptions were un-

---

**3.** This prejudice might well have been avoided, however, if the ALJ had waited another twenty minutes or so before ending the proceedings. Moreover, the cost in time and money, to the District and to this court, of the proceedings now before us dwarfs the expense entailed in having the inspector reappear, and the need for review by the appellate court might well have been avoided if the ALJ had either waited a little longer or granted a new hearing. Arguably, "this case demonstrates again that the shortest way around is often the longest way through." *In re C.W.*, 916 A.2d 158, 169 n. 10 (D.C.2007) (quoting, *inter alia, Webb v. Standard Oil Co.*, 451 F.2d 284, 285 (5th Cir.1971)).

sound, constituted an abuse of discretion warranting reversal. Any reasonable person would recognize that the scheduling of the eviction, on a single day's notice, for the same morning as the OAH hearing, had placed Prime in a very difficult situation and had undermined the assumptions on which the sanctions initially imposed were based. Notwithstanding this *pro se* litigant's procedural miscues, I would not sustain an exercise of discretion which did not take into account the dilemma in which Prime had been placed on July 19 and Prime's limited opportunity to reflect upon the alternatives available to him.

I respectfully dissent.