Hernan B. CASTRO, Petitioner,

v.

**SECURITY ASSURANCE MANAGEMENT, INCORPORATED, Respondent.**

No. 09–AA–807.

District of Columbia Court of Appeals.

Submitted March 15, 2011.

Decided May 26, 2011.

Hernan B. Castro, pro se.

No brief was filed and no appearance was entered on behalf of respondent.

Before FISHER and THOMPSON, Associate Judges, and SCHWELB, Senior Judge.

PER CURIAM:

Hernan D. Castro has asked this court to review an order of an Administrative Law Judge (ALJ) of the Office of Adminis-

trative Hearings (OAH), issued on June 18, 2009, denying Castro's claim for unemployment compensation. The ALJ found that Castro's employer, Security Assurance Management, Inc. (Security), did not terminate Castro's employment; that both before and after October 26, 2008, Castro's last day of work for Security, Castro had declined work offered to him by his employer; and that because Castro had left his employment voluntarily, he was not entitled to compensation. The ALJ's order reversed an earlier decision by a claims examiner of the District of Columbia Department of Employment Services (DOES), in which the examiner held that Castro had in fact been laid off for lack of work and that he was therefore eligible to receive benefits.

Before this court, Castro first contends that the ALJ abused his discretion in declining to issue a subpoena for a proposed witness. He next asserts, in part on the basis of certain documentary evidence which was not introduced before the ALJ, which is not a part of the administrative record, but which Castro nevertheless included, without objection, in an Appendix to his brief, that the ALJ erred in finding that Castro was not terminated by Security and is therefore ineligible for unemployment compensation.

We conclude, even assuming, solely for the sake of argument, that the requested subpoena should have been issued, that any error in that regard was harmless. We also hold, for the reasons stated in the concurring opinion, that the ALJ's finding that Security did not terminate Castro is supported by substantial evidence and that Castro's Appendix, not being a part of the administrative record, is not properly before us. Accordingly, we affirm.[1]

---

1. Castro also claims in this court that he is entitled to unemployment compensation for a

two-week period, prior to his last assignment, when Security had no work for him. This

SCHWELB, Senior Judge, concurring in the judgment:

I agree with the court that the decision of the OAH is supported by substantial evidence in the record and that it should be affirmed. In my opinion, however, two of the issues, one relating to the denial of Castro's motion for a subpoena, and the other concerning Castro's unorthodox (but unopposed) Appendix,[2] warrant more detailed discussion. Before reaching these issues, I set forth in greater detail the context in which they arise.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

In April, 2008, Castro was hired by Security as a Special Police Officer. In late June of that year, Castro was granted a leave of absence to visit his ill father in Peru. He returned to his home in Annandale, Virginia in late September of that year, and he resumed his employment with Security shortly thereafter.

The parties are in agreement that upon his return to the area, Castro worked for two or three days at a warehouse in northeast Washington, filling in for a vacationing employee named Officer McCullen Pitts. The precise dates of this assignment are unclear. Carlos A. Martinez, the Operations Manager for Security, testified that Castro "had an issue with" one of the employees at the warehouse, and that the

client asked Security "not to have him back there." Accordingly, some brief period later, Castro was assigned to the Embassy of Saudi Arabia to replace an officer named Charles Arnewt, who was then on compassionate leave for two weeks on account of the death of his daughter.

Between October 13 and October 26, Castro worked at the Saudi Embassy, but the accounts of the two parties diverge as to exactly what occurred. Both Martinez and Nathan S. Rudolph,[3] Castro's immediate supervisor at Security, testified that during the second week of this period, Castro stated that he would be unable, on several days, to work the hours requested of him because these hours would conflict with his (unspecified) other job. According to Castro, on the other hand, he worked the full two weeks at the Saudi Embassy, and he did not have any other employment at that time. Castro testified that the sole occasion on which he turned down work occurred before he was assigned to the Saudi Embassy, and that it involved a last-minute request by Rudolph that Castro work at the Embassy of Qatar for a single night because another employee had failed to show up.[4]

The parties also gave conflicting versions of what happened after October 26, which was Castro's last day of work at the Saudi Embassy. Martinez and Rudolph both testified that Rudolph called Castro twice during the week of October 27 to offer him further work at the Saudi Em-

claim was not brought to the attention of the ALJ, however, and we conclude that it has not been adequately preserved.

2.  As I explain in Part IV of this opinion, *post*, the contents of this purported Appendix, if genuine, tend to show that the testimony of the witnesses for Security, which the ALJ expressly credited in making his key findings, may very well have been incorrect.

3.  Martinez' testimony was largely hearsay, and based upon what Rudolph told him regarding Castro's alleged inability or unwillingness to work on assigned days.

4.  Castro testified that he told Rudolph that "I can't work that night because I had another job to do at home. My wife, she [had] me to do laundries, clean the house. So I had to do that."

bassy[5] and that Castro "said he couldn't do it." Martinez added that

> after we call a person, he doesn't respond, and, in addition, he doesn't even give us notice that he—he cannot do our full-time assignment, you know, *we didn't call him any more and he didn't call us any more either.*

(Emphasis added.) Martinez indicated that "we also [were] upset [with Castro] over these issues," but that nevertheless "we're still open to give him employment."

According to Castro, on the other hand, Rudolph told him ahead of time that October 26 would be his last day of work at the Saudi Embassy, and that he would be placed "on call" thereafter. Castro testified that he made numerous calls to Security and to Martinez in the days following the completion of two weeks at the Saudi Embassy, that he left several messages, but that "[n]obody called me, [n]obody at all. . . . I can ensure [sic][6] my phone company listing record, [if] you want." It is this telephone company document that Castro has placed in his *pro se* Appendix, which is not a part of the administrative record, but on which Castro seeks to rely in this court to secure reversal of the ALJ's decision.

Crediting Security's witnesses but not Castro with respect to the principal disputed issues of fact, the ALJ ruled in Security's favor. After accurately summarizing the applicable law,[7] the ALJ concluded:

> Employer has met its burden of demonstrating that Claimant was not laid off for lack of work. The evidence of record demonstrates that in October 2008, after training Claimant on the job, Employer twice offered Claimant job assignments to work at the Embassy of Saudi Arabia, and that twice Claimant declined the assignments. On at least one job assignment, *i.e.*, for the period Tuesday, October 21, 2008, through Friday, October 24, 2008, Claimant told Employer that he could not work at the Embassy of Saudi Arabia because he had another job. The evidence further demonstrates that around the last week of October 2008, Employer offered

---

**5.** Martinez believed that one of these offers was of work at 1627 K Street, N.W., not at the Saudi Embassy.

**6.** I assume that Castro said, or at least meant, "produce" rather than "ensure."

**7.** The ALJ wrote as follows:

> Generally, any unemployed individual who meets certain statutory eligibility requirements is qualified to receive benefits. D.C. Official Code § 51–109. The law, however, creates disqualification exceptions to the general rule of eligibility. The burden is upon the employer to establish an exception for an employee who would otherwise be eligible for unemployment insurance benefits under D.C. Official Code § 51–109. In this case, the Determination states that the Claimant was "laid off for lack of work." In other words, Claimant did not leave his work voluntarily. If an employee voluntarily leaves his or her most recent work without good cause, the employee is disqualified from receiving benefits. D.C. Official Code § 51–110(a). The burden is upon the employer to show that the employee voluntarily left work. OAH Rule 2820.3 (burden of production on party arguing an exception to a statutory requirement); *Berkley v. D.C. Transit, Inc.*, 950 A.2d 749, 758 (D.C.2008); *Green v. D.C. Dep't of Employment Servs.*, 499 A.2d 870, 876 (D.C.1985). Further, if a claimant's departure from work was voluntary, he or she is ineligible to receive benefits unless he or she can demonstrate that the leaving was for good cause connected with the work. *Cruz v. D.C. Dep't of Employment Servs.*, 633 A.2d 66, 69 (D.C. 1993).

Castro has not disputed the ALJ's legal analysis. I add only that neither the ALJ nor this court is required to accord any deference to the claims examiner's determination, which is reviewed *de novo*. *See, e.g., Rodriguez v. Filene's Basement, Inc.*, 905 A.2d 177, 179–80 (D.C.2006).

Claimant a job assignment to work at a building located at 1627 K Street, NW, Washington, D.C., and that Claimant declined that job assignment. The evidence demonstrates that at no time was Claimant laid off for lack of work, and that Employer did not terminate Claimant's employment.

At the hearing, Claimant testified that his last day of work at the Embassy of Saudi Arabia was October 26, 2008, and that at that time Mr. Rudolph told Claimant that he would be put on call. Claimant further testified that no more job assignments were offered to him after he finished his assignment at the Embassy of Saudi Arabia. I do not find Claimant's assertions credible for the following reasons. First, Mr. Rudolph credibly testified that he did not tell Claimant that his last day of work at the Embassy of Saudi Arabia would be October 26, 2008. Second, both Mr. Martinez and Mr. Rudolph testified in a credible manner that Claimant declined work at the Embassy of Saudi Arabia on two occasions in October 2008. Third, the evidence shows that, after Claimant worked at the Embassy of Saudi Arabia on Sunday, October 26, 2008, Claimant was offered, on or around the last week in October 2008, a job assignment to work at a building located at 1627 K Street, NW, Washington, D.C. Claimant declined the job assignment.

For the foregoing reasons, I find that Employer has met its burden of proving, by a preponderance of the evidence, that Claimant declined job assignments from Employer, and was not laid off for lack of work. Accordingly, the Claims Examiner's Determination is reversed. D.C. Official Code § 51–111(e); OAH Rule 2820.3. Claimant is disqualified from receiving unemployment compensation benefits.

## II.

### CASTRO'S MOTION FOR A SUBPOENA

Castro contends that the ALJ erred by denying Castro's request for a subpoena to Charles Arnewt. I agree with the court that reversal is not warranted on that ground. In my view, however, the issue warrants further discussion, for the ALJ's somewhat mechanical construction of the applicable regulation, if followed, might well preclude claimants for unemployment compensation, most of whom appear *pro se* and lack legal sophistication, from introducing probative evidence supporting their claims.

Castro, who was representing himself at the time,[8] filed the motion for a subpoena for Arnewt *pro se.* Apparently attempting to comply with the Scheduling Order, which is not in the record but which required a party requesting a subpoena to explain the relevance of the proposed witness' testimony,[9] Castro wrote that Ar-

---

8. All of the pre-hearing motions and other documents submitted by Castro were submitted *pro se* in handwritten from. An attorney from the "Claimant Advocacy Program" represented Castro at the hearing, but her participation in the proceeding was not extensive. Thereafter, Castro's petition for review by this court, as well as his brief and Appendix, were submitted *pro se.*

9. At the time of the hearing, the regulation applicable to subpoenas in cases such as Castro's provided, in pertinent part, as follows:
   Unless otherwise provided by law or order of this administrative court, any request for a subpoena shall be filed no later than eleven (11) days prior to the proposed return date, *and must state the relevance of the requested information or testimony to the pending case.* Failure to comply with the requirements of this Section may result in

newt's testimony would be relevant "because I replace[d] him for 2 weeks because he was on leave of [absence] for [a] family situation and when he [got] back to work, I had *no* site work to go, being placed on call by the manager, Mr. Nathan Rudolph." (Emphasis in original). The ALJ, however, was not persuaded:

> Claimant's subpoena request fails to comply with the Scheduling Order and OAH Rule 2822.2, in that the request does not explain why the testimony of the proposed witness is relevant. Claimant states that Mr. Arnewt will testify that Claimant substituted for him for two weeks and when Mr. Arnewt returned to work, Claimant had no site work. This does not appear relevant to the case because while Claimant may have substituted for Mr. Arnewt for two weeks, it does not appear that Mr. Arnewt has personal knowledge regarding Claimant's separation from Employer. Because Claimant failed to show the relevance of the testimony, as required by OAH Rule 2822.2 and as set forth in the Scheduling Order, I will deny the request.

Although I am unaware of any authority directly addressing the point, I do not doubt, and the court apparently agrees, that the determination whether or not to issue a subpoena is confided to the ALJ's sound discretion. However, "[a]n exercise of discretion must be founded upon correct legal standards," and a trial court "by definition abuses its discretion when its makes an error of law." *Teachey v. Carver,* 736 A.2d 998, 1004 (D.C.1999) (quoting *Koon v. United States,* 518 U.S. 81, 100, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996)).

Placing the issue in the appropriate legal context, I am of the opinion that the standard implicitly applied by the ALJ was too rigorous. Arnewt's proposed testimony tended to show that, at about the time that Castro claimed to have been laid off, the work that he had been doing became unavailable to him. The ALJ was in no position to determine, before the evidence was heard, that this would not prove relevant, and subsequent developments showed that Arnewt's testimony would have tended, at least to some appreciable degree, to corroborate Castro's version of events and contradict the testimony of Security's witnesses.

Had this proceeding been before the Superior Court, Castro would have been entitled to the issuance of the requested subpoena as a matter of right. Rule 45(a)(3) of the Superior Court's Rules of Civil Procedure provides: "The clerk shall issue a subpoena, signed but otherwise in blank, to any party requesting it." In *Davis v. Winfield,* 664 A.2d 836, 839 (D.C. 1995), a case before the Small Claims and Conciliation Branch of the Superior Court's Civil Division (a forum in which many litigants appear *pro se* ), we explained that "[i]n practice, [the Rule] mean[s] that the clerk of the court merely issues a blank subpoena to any litigant who wants one." We also note, as a relevant (though obviously not dispositive) consideration, that "[w]here [OAH] Rules do not address a procedural issue, an Administrative Law Judge may be guided by the District of Columbia Superior Court Rules of Civil Procedure to decide the issue." 1 DCMR § 2801.1 (2010). Given the remedial character of our unemployment compensation statute [10] and the ina-

---

the summary denial of the subpoena request.

1 DCMR § 2822.1 (2005) (emphasis added). The regulations were subsequently amended to permit the Clerk, in unemployment com-

pensation cases, upon an appropriate showing, to issue no more than three subpoenas to any party. 1 DCMR § 2984.1 (2010).

**10.** In *Bowman–Cook v. Washington Area Transit Auth.,* 16 A.3d 130 (D.C.2011), we recently

bility of many or most claimants to retain counsel, *see Rhea v. Designmark Serv., Inc.*, 942 A.2d 651, 655 (D.C.2008),[11] I am satisfied that the threshold for articulating the relevance of the testimony of a proposed witness was not intended to be a demanding one. Moreover, it is difficult, in advance of the hearing, to anticipate whether a witness' testimony will or will not prove relevant, and in most cases the party requesting the subpoena should be given the benefit of the doubt. To hold otherwise would be to impose on parties in unemployment compensation cases procedural obstacles which most litigants in other forums are not required to confront.

In the present case, Castro claimed that he was assigned to the Saudi Embassy for two weeks because Arnewt was temporarily on compassionate leave, and that consequently, Castro's assignment there would end upon Arnewt's return. Rudolph, on the other hand, testified that Security had "several openings" at the Saudi Embassy because "we had a cadre of young officers who just weren't cutting the mustard as far as the client was concerned."

It was thus Security's position that Arnewt's return would have no effect on the availability of work for Castro. Accordingly, if Arnewt had been called as a witness and could have confirmed that Castro was his temporary replacement on a "one for one" basis, such testimony, as the eviden-tiary record now confirms, would at least arguably have supported Castro's position on a disputed issue. In my view, Arnewt's proposed testimony was therefore at least potentially relevant, and the contrary could not fairly be assumed in advance. By applying an unduly crabbed and restrictive view of relevance when he had no way of knowing how the testimony would unfold, the ALJ at least arguably abused his discretion when he denied Castro's request for a subpoena.

Given the ALJ's subsequent credibility findings, however, I perceive no appreciable possibility that a subpoena to Arnewt would have enabled Castro to carry the day before the ALJ. The principal issue in this case turned on what occurred on the days *after* October 26. Specifically, the ALJ had to determine whether Castro was effectively terminated, as he claimed, or whether he declined further employment with Security, as Martinez and Rudolph asserted. The ALJ appeared to have little doubt as to whom he believed and whom he did not, and it is improbable that any modest support that Arnewt could have provided to Castro's case would have significantly affected the ALJ's findings. Accordingly, although, in my opinion, the ALJ should have been more receptive to Castro's motion for a subpoena, any error in that regard was harmless.

---

reiterated that our unemployment compensation statute constitutes a

"remedial humanitarian [program] of vast import," and that the statute and regulations implementing it must be "liberally and broadly construed," *Cruz v. District of Columbia Dep't of Emp't Servs.*, 633 A.2d 66, 69 (D.C.1993) (citation omitted), so as to serve its purpose of protecting employees "against economic dependency caused by temporary unemployment and to reduce the need for other welfare programs." *Washington Times v. District of Columbia Dep't of*

*Emp't Servs.*, 724 A.2d 1212, 1216–17 (D.C. 1999).

11. We stated in *Rhea*, 942 A.2d at 655:

In most instances, "[t]he wealthiest among us do not [seek unemployment compensation], and many complainants in cases brought under the Act are not affluent, nor are they in a position to afford to retain private counsel to conduct protracted proceedings before the [agency, the OAH], and the courts." *Goodman v. District of Columbia Rental Hous. Comm'n*, 573 A.2d 1293, 1299 (D.C.1990).

## III.

### SUBSTANTIAL EVIDENCE

Castro's principal claim before this court is that he was laid off by Security, that he became unemployed through no fault of his own, that he is therefore entitled to unemployment compensation, and that the ALJ's findings to the contrary are erroneous. This contention is unpersuasive.

This court reviews the ALJ's order under the now-familiar substantial evidence standard, which we summarized in *Rodriguez* as follows:

> This court must affirm an OAH decision when (1) OAH made findings of fact on each materially contested issue of fact, (2) substantial evidence supports each finding, and (3) OAH's conclusions flow rationally from its findings of fact. *See Giles v. District of Columbia Dep't of Employment Servs.*, 758 A.2d 522, 524 (D.C.2000); *Perkins v. District of Columbia Dep't of Employment Servs.*, 482 A.2d 401, 402 (D.C.1984). We defer to OAH findings of fact so long as they are supported by substantial evidence. *See Cooper v. District of Columbia Dep't of Employment Servs.*, 588 A.2d 1172, 1174 (D.C.1991); D.C.Code § 2–510(a)(3)(E) (2001). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Gardner v. District of Columbia Dep't of Employment Servs.*, 736 A.2d 1012, 1015 (D.C.1999) (citations omitted). OAH's legal conclusions must be sustained unless they are [a] "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." D.C.Code § 2–510(a)(3)(A) (2001).

905 A.2d at 180–81. "Significantly for present purposes, we must uphold the agency action if it is supported by substantial evidence even if there is substantial evidence to support a contrary conclusion." *Combs v. District of Columbia Dep't of Employment Servs.*, 983 A.2d 1004, 1009 (D.C.2009). Further, as this court reiterated in *Morris v. United States*, 728 A.2d 1210 (D.C.1999),

> [t]he judge had a front-row seat as the testimony unfolded. We, on the other hand, are limited to a paper transcript which, while capturing the words of a case, may often miss its heart and soul. *Cf. In re S.G.*, 581 A.2d 771, 774–75 (D.C.1990). Indeed, as Judge Jerome Frank has recognized,
>
> > [a] stenographic transcript correct in every detail fails to reproduce tones of voice and hesitations of speech that often make a sentence mean the reverse of what the words signify. The best and most accurate record is like a dehydrated peach; it has neither the substance nor the flavor of the fruit before it was dried.
>
> *Broadcast Music, Inc. v. Havana Madrid Rest. Corp.*, 175 F.2d 77, 80 (2d Cir.1949) (quoting Ulman, The Judge Takes The Stand 267 (1933)).

*Id.* at 1215; *accord, Combs,* 983 A.2d at 1010.

Both Martinez and Rudolph testified unequivocally on behalf of Security that Castro was not laid off, and that they stopped calling him only after he had refused offers of work on several occasions. Their testimony constituted substantial evidence, as defined above, in support of the ALJ's findings, and I agree with the court that we are in no position, on the basis of a paper record, to second-guess the ALJ's credibility determinations. We must therefore sustain the ALJ's finding that Castro was not laid off, and in light of the administrative record, that his tenure with Security ended as a result of Castro's own refusal of offers of work.

## IV.

### CASTRO'S *PRO SE* APPENDIX

A. *Procedural Context and Standard of Review*

In support of his petition for review, Castro filed not only a *pro se* brief but also a purported Appendix. The Appendix consists primarily of

1. an unverified copy of a portion of an AT & T cellular telephone bill apparently showing Castro's incoming and outgoing calls for the period October 25 through October 30, 2008; the document appears to show eight outgoing calls from Castro to Security's office, and six telephone calls from Castro to Martinez, but no incoming calls from either of these numbers; and

2. an unverified earnings statement for Castro from Security dated November 4, 2008, which reflects total earnings of $1323.18 for the period ending October 26, 2008.

Neither of these documents was introduced into evidence at the hearing before the ALJ, although Castro did testify, as we have seen, that the telephone records would confirm his claim that, notwithstanding his numerous telephone calls to Security after he had completed two weeks[12] at the Saudi Embassy, no representative of Security returned his calls or offered him work. He now contends that the AT & T statement in his Appendix, which reflects late-October calls from him to Security's office and to Martinez, but none from any representative of Security to him, conclusively refutes the testimony of Martinez and Rudolph, as well as the ALJ's findings based on that testimony, with respect to how Castro's employment with Security ended.

"Appellate review of an administrative decision is limited to matters appearing in the [administrative] record." *Cooper v. District of Columbia Dep't of Employment Servs.*, 588 A.2d 1172, 1176 (D.C.1991) (citation omitted). In *Prime v. District of Columbia Dep't of Public Works*, 955 A.2d 178 (D.C.2008), we stated under similar circumstances:

Petitioner urges us to consider new evidence included in an Appendix to his brief, which he argues . . . evidence presented at the hearing was unreliable. But because petitioner . . . failed otherwise to present it to OAH, we will not consider it in our review.

*Id.* at 182–83. That would ordinarily be that; indeed, the court holds, that *is* that, and I find it hard to disagree. Nevertheless, there are circumstances in this case that arguably raise a non-frivolous issue as to the applicability of this very fundamental rule.

Notwithstanding the irregularity of Castro's *pro se* Appendix, Security has not objected to its filing. Indeed, Security has not filed a brief in this court, nor has it participated in any way in the proceedings relating to Castro's petition for review. While this court has agreed with the Supreme Court of Illinois that, in spite of the failure of an appellee or respondent to file a brief, "the considered judgment of the [ALJ] should not be set aside without some consideration of the merits of the appeal," *First Capitol Mortgage Corp. v. Talandis Constr. Corp.*, 63 Ill.2d 128, 345 N.E.2d 493, 494 (1976) (quoted in *Kidd Int'l Home Care, Inc. v. Prince*, 917 A.2d 1083, 1087 (D.C.2007)), the employer's non-participation "is a factor that we may appropriately consider in our calculus."

---

**12.** Castro also asserts, without further substantiation, that his earnings statement proves, contrary to the testimony of Security's witnesses, that he worked throughout the entire two-week period from October 13 to October 26.

*Rhea,* 942 A.2d at 655.[13] In the present case, Security's inaction has resulted in the odd reality that Castro's filing of an Appendix which is not a part of the administrative record was nevertheless unopposed.

This makes the issue somewhat tantalizing. Security's response to Castro's impermissible filing was not an objection, but rather a total failure on the part of Security to protect its rights. If, instead, of presenting us with *pro se* Appendix which contains material not in the administrative record, Castro had filed with the OAH a timely motion to reopen or supplement the record, and if such a motion had been unopposed, there would arguably have been good reason for the OAH to grant the motion, at least with respect to the telephone records. As I have noted, Castro referred to these records in his testimony and, assuming he could prove that the records are genuine, they tend to corroborate his account (and contradict that of Security's witnesses) as to what occurred in the wake of Arnewt's return to work. Indeed, fourteen calls from Castro to Security in the days after Castro completed his stint at the Saudi Embassy, with *no* calls from Security to Castro during the same brief period, strongly suggest, in the absence of some reasonable explanation from Security, that Castro wanted something (presumably work) from his erstwhile employer, but that his former supervisors, at least one of whom admitted his irritation with Castro, were not responsive. The apparent corroboration [14] by the telephone log of Castro's account of what took place raises the disagreeable possibility—perhaps even a *probability*—that the ALJ's findings were based on incorrect testimony which the ALJ nevertheless believed.

Unfortunately, however, Castro, who had counsel at the hearing, but who represented himself both before and after it, was obviously unfamiliar with legal esoterica such as motions to reopen or supplement the record. Although our precedents reflect efforts by this court to minimize technical problems encountered by legally unsophisticated litigants who are seeking to vindicate their rights under remedial statutes, *see ante,* notes 8 and 9 and associated text, there must necessarily be some limit. In this case, the employer never had the opportunity, at the evidentiary hearing stage, to confront or rebut the evidence on which Castro now seeks to rely. These are fundamental rights under our adversarial system, and we cannot base a decision on evidence first presented to the reviewing court without transgressing these rights.

To be sure, Security did nothing at all to protect its rights once the case reached this court, and one might argue that it waived its objection to the supplementation of the record. Orderly procedure, however, requires separation of proceedings at the trial or hearing level from those on appeal or review. Security had the

---

13. *Cf. Wailes v. Rocky Mountain Pre–Mix Concrete,* 783 P.2d 1138, 1138 n. 1 (Wyo.1989) ("In sternest terms, we would warn that summary reversal without extended review could realistically be expected in future cases where an appellee does not file an appellate brief.") Although this court has quoted the foregoing language from the *Wailes* decision, *Rhea,* 942 A.2d at 655; *Kidd Int'l,* 917 A.2d at 1087 n. 4, we have taken a more moderate position in these cases, namely, that the failure of an appellee or respondent to file a brief is a relevant factor but not a decisive one.

14. I do not suggest that the telephone log proves beyond all doubt that Security's version of the key events was wrong. Nevertheless, if the listing of calls is genuine, it is far more supportive of Castro's testimony than it is of the accounts provided by Martinez and Rudolph.

right to rely (whether or not it in fact relied) on a basic norm of our system, namely, that this court's review of the OAH decision would be based on the administrative record alone, and that this would remain true regardless of what Security elected to do or not to do thereafter.

It is unfortunate that someone did not inform Castro that if he proposed to rely on the telephone records, he would have to introduce them into evidence or, failing that, to file a timely motion with the OAH to reopen or supplement the record. But evidently nobody did tell him, and disposition of the case by this court on the basis of an unverified document which the trier of fact never saw is impermissible and unwarranted. Accordingly, I concur in the judgment of the court.