**David F. GAGE, et al., Petitioners,**

v.

**DISTRICT OF COLUMBIA BOARD OF ZONING ADJUSTMENT,**
Respondent,

and

**Jan Schneider, Intervenor.**

Nos. 96–AA–1519, 97–AA–237.

District of Columbia Court of Appeals.

Argued May 13, 1999.
Decided Oct. 14, 1999.

Paul J. Kiernan, with whom John T. Epting, and Karin M. Ryan, Washington, DC, were on the brief, for petitioners. Louis P. Robbins, Washington, DC, also entered an appearance for petitioners.

Jan Schneider, with whom Jeffrey A. Lovitky, Washington, DC, was on the brief, for intervenor.

Charles L. Reischel, Deputy Corporation Counsel, filed a statement in lieu of brief, for respondent.

Before TERRY and REID, Associate Judges, and MACK, Senior Judge.

PER CURIAM:

This is an appeal by a group of health professionals seeking special exceptions to open offices in a condominium complex (the Lauren) located at 1301 20th Street, N.W. (an SP–2 District) where office use is permitted by special exception. 11 DCMR §§ 501 & 508 (1995). Petitioners contend that the District of Columbia Board of Zoning Adjustment ("the Board") erred in denying their applications for such exceptions, specifically urging errors in: (1) reopening the applications after it had voted to approve petitioners' applications, but before a written order had been issued; (2) failing to issue a written order in a timely manner; (3) issuing its final order without first issuing a proposed order; and (4) arbitrarily and capriciously denying petitioners' applications. We affirm.

In 1989, some of the petitioners filed applications for special exceptions to establish offices for mental health professionals in the units they owned.[1] A hearing was held on December 13, 1989. On January 3, 1990, the Board voted to grant those applications, subject to the condition that the offices' hours of operation be limited to 8:00 AM to 6:00 PM.

Other applications for special exceptions were filed with the Board in 1990, by people who owned units within the Lauren. During a July 18, 1990 hearing, the Board directed its staff to seek advice from the Corporation Counsel on whether petitioners' applications had been properly authorized, and on whether the Condominium Association should be a party. At a public hearing on November 7, 1990, the Board received a memorandum from the Corporation Counsel concerning the participation of the Condominium Association in the proceedings. During this hearing, the Board voted to reopen petitioners' applications in order to receive the Corporation

---

1. It is represented (and the record confirms) that some of the petitioners were operating offices prior to this time without having obtained certificates of occupancy for commercial purposes. Petitioners were put on notice of the requirements for commercial use. *See Dresser v. Sunderland Apartments Tenants Ass'n,* 465 A.2d 835 (D.C.1983).

Counsel's advice. Petitioners' applications were consolidated with later applications, and the Condominium Association was made a party to the proceedings.

The Board held public hearings in 1992 and 1993. On June 2, 1993, the Board voted to deny all pending applications, including those of the initial petitioners. Counsel for petitioners filed a motion to compel issuance of an order approving petitioners' applications pursuant to the January 3, 1990 vote. The Board voted to deny this motion on September 7, 1994, and issued a written order to that effect on January 20, 1995.

On February 2, 1995, petitioners filed a motion to reconsider. The Board granted the motion to reconsider on March 1, 1995, and during a May 17, 1995 meeting reexamined the applications. In a written order dated October 1, 1995, the Board reaffirmed its opinion that the January 20, 1995 order was correct. Petitioners then filed a motion to withdraw the reconsideration order on October 11, 1996. The Board denied this motion in a written order dated February 3, 1997. Petitioners then appealed to this court.

■ Petitioners first contend that the decision to reopen their applications was improper because one of the Board members voting to reopen (Ms. Jewell) did not participate in the 1989 hearing and made no indication that she had read the record. While "[n]o person shall vote on any post-hearing motion unless the member participated in and voted on the original decision, or the member read the transcript of the hearings and reviewed the record," 11 DCMR § 3332.8, "we start from the premise that the agency's decision, like the decision of a trial court, is presumed to be correct, so that the burden of demonstrating error is on the appellant or petitioner who challenges the decision." *Cohen v. Rental Housing Comm'n*, 496 A.2d 603, 605 (D.C.1985) (citation omitted). In this instance, petitioners have asserted "the record does not reflect that Ms. Jewell had read the record prior to voting to reopen the record." Petitioners have not affirmatively shown, however, that Ms. Jewel *did not* read the record. Accordingly, they have not met their burden to show the decision by the Board was in error.

■ Next, petitioners contend that the Board erred in failing to issue a written order in a timely fashion. A decision by the Board is not final until the Board has issued a written order. 11 DCMR § 3331.3. Further, the Board has the power on its own motion to reopen an application before the final order is filed. 11 DCMR § 3330.2. Because it voted to reopen the applications in order to consult with the Corporation Counsel, we find no error.

■ Petitioners also assert that the Board erred by failing to issue a proposed order pursuant to D.C.Code § 1–1509(d) (1992 Repl.). We need not decide whether such a procedural defect occurred, as we are satisfied that petitioners suffered no prejudice. *See* D.C.Code § 1–1510(b) (1992 Repl.); *Robinson v. Smith*, 683 A.2d 481, 490 (D.C.1996). Petitioners filed a subsequent motion to reconsider which the Board granted. After re-examining the record, the Board reaffirmed its initial order. Petitioners had ample opportunity to convince the Board that its initial order was erroneous, and failed to do so.

Finally, petitioners maintain that the decision by the Board is arbitrary and capricious. *See Neighbors on Upton St. v. District of Columbia Bd. of Zoning Adjustment*, 697 A.2d 3, 6 (D.C.1997). Specifically, they contend that when an application meets all of the requirements for a special exception, the Board ordinarily must grant the application. *See Glenbrook Road Ass'n v. District of Columbia Bd. of Zoning Adjustment*, 605 A.2d 22, 30 (D.C.1992); *Wheeler v. District of Columbia Bd. of Zoning Adjustment*, 395 A.2d 85, 89 (D.C.1978); *Stewart v. District of Columbia Bd. of Zoning Adjustment*, 305 A.2d 516, 518 (D.C.1973). They offer two

specific arguments in support of this claim.

■ First, petitioners assert that the proposed use is "in harmony with existing uses and structures on neighboring property." 11 DCMR § 508.3. They argue that the Board erred in considering only the residential uses within the Lauren, stating, "even if other units within the Building constituted 'neighboring property,' the proposed uses are in harmony with their existing use." The Board concluded, however, that the existing uses of condominium units for offices within the Lauren could not be considered:

[R]egardless of the length of time any of the existing uses have operated in the subject building, they were never legally established and, therefore, cannot be construed to be "grandfathered" upheld the previous SP District regulations. The Board finds that the only existing legitimate use of the structure would be for residential purposes.

We concur in this conclusion, and find no error in the Board's determination that petitioners failed to satisfy their burden of proof. *Cf. Capitol Hill Restoration Society, Inc. v. District of Columbia Bd. of Zoning Adjustment,* 398 A.2d 13, 15–16 (D.C.1979)(failure of neighbors to challenge prior illegal use for more than ten years will not support the granting of a zoning variance which would make that use legal).

■ Second, petitioners contend that "each individual owner [of a condominium unit] should have the right under the law to seek zoning relief for his or her property without reference to other units and without the participation of the Condominium Association." Because a condominium involves not just ownership of the condominium unit, but also an ownership interest in the undivided whole of the common elements of the building, D.C.Code § 45–1802(6) (1990 Repl.), it was not an error to require the participation of the Condominium Association. Those owners of condominium units who did not apply for the special exceptions still had an interest in the proceedings by virtue of their shared interest in the common areas.

*Affirmed.*