Eugene M. HARRIS, Petitioner,

v.

DISTRICT OF COLUMBIA DEPARTMENT OF EMPLOYMENT SERVICES, Respondent,

Bell Atlantic–Washington, D.C., Inc., Intervenor.

No. 96–AA–1908.

District of Columbia Court of Appeals.

Argued Dec. 15, 1998.

Decided Feb. 10, 2000.

---

Richard C. Strasser for petitioner.

Lutz Alexander Prager, Assistant Corporation Counsel, filed a statement in lieu of brief, for respondent.

Donald P. Maiberger, Rockville, MD, for intervenor.

Before RUIZ and REID, Associate Judges, and KING, Senior Judge.

KING, Senior Judge:

This is the fourth time this case has come before us for review. When we first considered it, we remanded for a determination of the time when Eugene M. Harris received notice that the employer had filed an injury report with the Department of Employment Services ("DOES"), because of the effect the timing of the filing had on the statute of limitations. *Harris v. District of Columbia Dep't of Employment Servs.*, 592 A.2d 1014, 1018 (D.C.1991). Next, in *Harris v. District of Columbia Dep't of Employment Servs.*, 648 A.2d 672, 673 (D.C.1994), we vacated the first opinion after receiving an exhibit showing that Harris had in fact filed the claim before the employer's filing of an injury report; therefore, the claim was timely filed. Next, in *Harris v. District of Columbia Office of Worker's Compensation*, 660 A.2d 404, 408–10 (D.C.1995), we again remanded, holding that the agency erred in denying the claim on the grounds that it was a recurrence of a 1977 injury and was therefore compensable only under the predecessor statute, not the statute in effect in 1983

and today. Finally, in this petition for review, Harris challenges a compensation order holding that, while he suffered an injury in 1983 that was not a recurrence of the earlier injury, Harris had no corresponding disability, and therefore was not entitled to any compensation. In this instance we affirm.

### I.

Harris was employed by Bell Atlantic, and its predecessor, C & P Telephone Co., beginning in 1969. Harris initially injured his back in 1977, suffering a lumbar sprain while performing his work duties. Harris returned to work with restrictions. His lumbar condition became chronic.

In 1983, Harris was working as a supervisor, a sedentary position. In that year, however, while C & P Telephone employees were on strike, Harris and other supervisors were asked to perform non-sedentary work. When Harris was performing the function of a frame attendant, his lumbar symptoms began to increase in intensity.

Some time later, Harris was unable to perform his functions due to his increased back pain, and he stopped working on July 8, 1985. On September 30, 1985, Dr. Sam Wiesel, an orthopedic consultant, performed an examination of Harris at the request of C & P Telephone. Dr. Wiesel wrote a report stating Harris was capable of performing non-heavy labor work. Based on Dr. Wiesel's report, C & P Telephone's Medical Department released Harris to return to work on October 23, 1985 in his previous position as a supervisor. Harris, however, did not return to work until November 12, 1985. He was paid his full salary from July 8, 1985 through October 22, 1985, and from November 12, 1985 until he was terminated in November 1994, assertedly as a part of a reduction in force.

Harris submitted progress reports from his treating physician, Dr. Jeffrey Goltz. In an October 21, 1985 progress report, Dr. Goltz stated that Harris was unable to

return to work. In a November 18, 1985 report, Dr. Goltz observed that Harris had returned to work, but that Dr. Goltz believed someone at work was pushing him to do more than he could do physically.

Because Harris did not return to work on October 23, 1985, Dr. Anita Herbert, C & P Telephone's Washington Medical Director, phoned Dr. Goltz to inquire about Harris's condition. From this conversation, which took place on November 12, 1985, Dr. Herbert learned that Dr. Goltz believed Harris's work assignment involved physical labor. Dr. Herbert informed Dr. Goltz that was not the case, that Harris's job was sedentary in nature, and that he did not have to do heavy lifting.

After our last remand, the hearing examiner issued a compensation order, dated May 10, 1996, finding there was no disability for which Harris could be compensated. The hearing examiner rejected the opinions of Dr. Goltz, noting that Dr. Goltz's records were unclear as to whether he had been informed of the overwhelming sedentary nature of Harris's position. After the Director of the Department of Employment Services ("the Director") declined to review the compensation order, Harris filed a petition for review with this court pursuant to D.C.Code § 36–322(b)(3) (1997 Repl.). Before us, Harris presents two arguments in support of his claim that the hearing examiner erred. Specifically, he contends: (1) the examiner improperly denied him benefits for a permanent disability; and (2) the examiner erred in ruling he was not disabled from October 23, 1985 until he returned to work on November 12, 1985. We will consider each contention in turn.

## II.

Harris first argues that the hearing examiner failed to award benefits to Harris for a permanent disability. He contends that he is entitled to such an award based on several different theories, all of which we reject.

D.C.Code § 36–308(3) (1997 Repl.) sets forth the method through which a "disability partial in character but permanent in quality" is to be compensated. The Act defines a disability as a "physical or mental incapacity because of injury which results in the loss of wages." D.C.Code § 36–301(8) (1997 Repl.). Reading these two provisions together, a disability is partial when it is the result of an injury causing some, but not an entire, loss of wages. A disability is permanent if the employee will suffer at least some loss of wages which he will not regain due to the injury.

Section 36–308(3) establishes two separate bases for compensating employees who have suffered a permanent disability. Section 36–308(3)(A) through (U) establishes a schedule of awards. Under that provision, an employee suffering a permanent disability will receive an award for any injury specifically listed (a "schedule injury") in addition to any compensation for temporary total or partial disability. D.C.Code § 36–308(3). When an employee suffers a schedule injury, the employee will receive a sum consisting of 66⅔% of his average weekly wage multiplied by the number of weeks set forth in the Act for the particular injury. Thus, for example, an employee who suffers the loss of an arm (a schedule injury) will receive 66⅔% of his weekly wage multiplied by 312 weeks. D.C.Code § 36–308(3)(A). There is no dispute that Harris did not suffer a schedule injury.

By contrast, when an employee suffers a permanent loss of earnings due to an injury, but has not suffered an injury listed in sections (A) through (U) (*i.e.*, a schedule injury), section (V) sets forth the rate of compensation:

■ The compensation shall be 66⅔% of the greater of: .

(I) The difference between the employee's actual wage at the time of injury and the average weekly wage, at the

time of injury, of the job that the employee holds after the employee becomes disabled; or

(II) The difference between the average weekly wage, at the time the employee returns to work, of the job that the employee held before the employee became disabled and the actual wage of the job that the employee holds when the employee returns to work.

D.C.Code § 36–308(3)(V)(ii) (1997 Repl.). To receive an award under this section, therefore, the employee must suffer an actual loss of wages. *Washington Metro. Area Transit Auth. v. District of Columbia Dep't of Employment Servs.*, 683 A.2d 470, 473 (D.C.1996) (*"WMATA"*). "Disability is an economic and not a medical concept." *Washington Post v. District of Columbia Dep't of Employment Servs.*, 675 A.2d 37, 40 (D.C.1996) (citing *American Mut. Ins. Co. v. Jones*, 138 U.S.App. D.C. 269, 271, 426 F.2d 1263, 1265 (1970)). Because he did not suffer an actual loss of wages, Harris is not entitled to an award under this section.

Further, Harris claims that he is entitled to compensation for the time after he suffered his injury in 1983, until he was terminated. To support this claim, Harris cites to D.C.Code § 36–308(6)(A) (1997 Repl.):

If an employee receives an injury, which combined with a previous occupational or nonoccupational disability or physical impairment causes substantially greater disability or death, the liability of the employer shall be as if the subsequent injury alone caused the subsequent amount of disability and shall be the payment of:

(i) All medical expenses;

(ii) All monetary benefits for temporary total or partial injuries; and

(iii) Monetary benefits for permanent total or partial injuries up to 104 weeks.

Harris would have us read this section to mean that when an employee who has a pre-existing disability or impairment suffers a work-related injury, and the combination of the two causes substantially greater disability, then the employee is automatically entitled to receive 66⅔% of his average weekly wage, even if the employee returns to work at no loss of wages. Harris's reliance on § 36–308(6) is misplaced.

■ We have previously stated that under § 36–308(6), "where there is a prior injury, liability should be imposed as if the subsequent injury *alone* caused the disability." *Daniel v. District of Columbia Dep't of Employment Servs.*, 673 A.2d 205, 208 (D.C.1996) (emphasis in original). Thus, § 36–308(6) does not create a new entitlement to special benefits solely because the employee suffers a new injury in addition to an older injury. Rather, if the prior and current injuries together cause a permanent disability, § 36–308(3) applies, and the employer is liable as if the current injury alone caused the disability.

■ Here, the hearing examiner treated Harris as if his alleged disability was caused by the 1983 injury, and not the 1977 injury. Additionally, the hearing examiner found that while Harris did not work from July 8, 1985 to November 12, 1985, Harris was paid his full salary from July 8, 1985 to October 22, 1985. The hearing examiner further found, correctly, as discussed below, that between October 23, 1985 and November 12, 1985, Harris was capable of performing his usual sedentary employment. Therefore, Harris suffered no loss of wages because of his work-related injury. In short, because Harris received his full salary, or, for part of the period, he was fit to resume work, but did not do so, the hearing examiner properly concluded that Harris did not suffer any disability.

■ Further, we must underscore the difference between an injury and a disability. Harris has presented evidence that due to his injury, his physical condition has been permanently changed. That, howev-

er, is not enough to establish a permanent disability. To establish a permanent disability, Harris must show that he suffered a permanent loss in wages because of this permanent change in physical condition. *See* D.C.Code § 36-301(8); *WMATA, supra*, 683 A.2d at 473. In this instance, after the injury, Harris returned to work on November 12, 1985, as a supervisor, and he continued to work in that position for a number of years afterward. Accordingly, there was no loss of wages due to the work-related injury.

▪ Finally, Harris contends that because of his permanent physical condition, he was unable to advance into a position that yielded a higher rate of pay. In essence, Harris argues that his permanent physical condition caused a loss of wage earning capacity. The agency rejected that claim and we discern no basis for upsetting that determination. In doing so, we defer to an agency's interpretation of the statute which governs it, so long as that interpretation is not unreasonable or inconsistent with the language of the statute or its legislative history. *Robinson v. Smith*, 683 A.2d 481, 488 (D.C.1996) (citing *Kalorama Heights Ltd. Partnership v. District of Columbia Dep't of Consumer & Regulatory Affairs*, 655 A.2d 865, 868 (D.C.1995)); *DeShazo v. Columbia Dep't of Employment Servs.*, 638 A.2d 1152, 1154 (D.C.1994).

▪ In *Mauti v. Pro Football, Inc.*, H & AS No. 86-433, OWC No. 0071338, Dir. Dkt. No. 87-57, slip op. at 5 (Director's Decision, March 4, 1994), the Director ruled that under the plain language of the Act the benefits for permanent partial disability are based on an actual loss of wages, and not a loss of earning capacity.

The plain language of D.C.Code § 36-308(V)(ii), see *supra* at 5, supports this conclusion. In order to receive benefits under this section, the employee must suffer a *loss of wages. WMATA, supra*, 683 A.2d at 473. The Director's interpretation, therefore, is neither unreasonable nor inconsistent with the statute. Accordingly, Harris would not be entitled to an increase in benefits because of the loss of an opportunity to advance to a higher paying position.[1]

### III.

▪ Harris next contends that the hearing examiner erred in rejecting his treating physician's opinion and by ruling that there was no disability for the period October 23, 1985 up to November 12, 1985 when he returned to work at full pay. In examining an order from the hearing examiner, we must determine if the order is supported by substantial evidence on the record as a whole. *Santos v. District of Columbia Dep't of Employment Servs.*, 536 A.2d 1085, 1088 (D.C.1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Ferreira v. District of Columbia Dep't of Employment Servs.*, 667 A.2d 310, 312 (D.C.1995) (citations and internal quotations omitted). Under our authorities, the testimony of a treating physician is ordinarily preferred over that of a physician retained solely for litigation purposes. *See Stewart v. District of Columbia Dep't of Employment Servs.*, 606 A.2d 1350, 1353 (D.C.1992). The hearing examiner, however, acts as the judge of credibility, and may reject the testimony of a treating physician due to conflicting evidence. *Canlas v. District of*

---

1. For the first time on appeal, Harris claims that in 1994 he "was terminated, without justification, by Bell Atlantic." Thus, Harris appears to be arguing that he was the victim of a retaliatory discharge. We have stated that "in the absence of exceptional circumstances, we will not entertain a claim that was not raised before the agency." *Hill v. District of Columbia Dep't of Employment Servs.*, 717

A.2d 909, 912 (D.C.1998) (citing *Glenbrook Road Ass'n v. District of Columbia Board of Zoning Adjustment*, 605 A.2d 22, 33 (D.C. 1992)). *See also Hughes v. District of Columbia Dep't of Employment Servs.*, 498 A.2d 567, 570 (D.C.1985). Because no exceptional circumstances are apparent on this record, we decline to consider this issue.

*Columbia Dep't of Employment Servs.,* 723 A.2d 1210, 1212 (D.C.1999) (examiner must give reasons for rejecting a treating physician's testimony). *See McKinley v. District of Columbia Dep't of Employment Servs.,* 696 A.2d 1377, 1386 (D.C.1997) (citing *Robinson, supra,* 683 A.2d at 488).[2]

In this instance, the hearing examiner rejected the opinion of Harris's treating physician, Dr. Goltz, for several reasons. The hearing examiner observed that Dr. Goltz's records were unclear as to whether he was aware of the sedentary nature of Harris's position. A review of the reports supports this conclusion. Dr. Goltz also stated that he believed that someone at the place of employment was pushing Harris to do physical work beyond that which he could reasonably do. Dr. Goltz gave no reason for this belief, and did not state upon what facts it was based.

Moreover, the record reveals that Dr. Goltz was under the impression on October 21, 1985, when he opined that Harris was "unable to return to work," that Harris was expected to do heavy lifting. As we said above, Dr. Herbert phoned Dr. Goltz on November 12, 1985, to discuss the basis for Dr. Goltz's failure to clear Harris to return to work. During this conversation, Dr. Goltz expressed some concern that Harris could not engage in any heavy lifting. Dr. Herbert, however, informed Dr. Goltz that Harris's position as a supervisor was primarily a desk job that involved no heavy lifting. Dr. Herbert also testified that Harris was able to move about and change positions as his back required.

Finally, in the November 12 conversation, Dr. Goltz told Dr. Herbert that psychological stress was the cause of Harris's pain. Thus, Dr. Goltz's conclusion that Harris was disabled appears to be based, first on a misunderstanding of the nature of Harris's work, and second on an opinion of Harris's psychological condition, not his physical condition. Under these circum-

stances, the hearing examiner did not err in relying on Dr. Wiesel's opinion over that of Dr. Goltz. It follows, therefore, that the hearing examiner did not err in concluding that Harris was not disabled during the contested period.

Accordingly, the compensation order of May 10, 1996 is

*Affirmed.*

---

**2.** In *McKinley,* the court noted the equivocal nature of the treating physician's testimony was a sufficient basis for the hearing examin-

er to reject that evidence and conclude that the claimant's emotional injury was not work-related. 696 A.2d at 1384–85.