Portia GOLDING–ALLEYNE, Petitioner,

v.

DISTRICT OF COLUMBIA DEPARTMENT OF EMPLOYMENT SERVICES, Respondent,

and

Washington Hospital Center, Intervenor.

No. 07–AA–1281.

District of Columbia Court of Appeals.

Argued Jan. 6, 2009.

Decided Sept. 24, 2009.

---

Eric M. May, Washington, for petitioner.

Charles F. Fuller for intervenor.

Peter J. Nickles, Interim Attorney General for the District of Columbia at the time, Todd S. Kim, Solicitor General, Donna M. Murasky, Deputy Solicitor General, and David A. Hyden, Assistant Attorney General, filed a statement in lieu of brief for respondent.

BEFORE RUIZ and FISHER, Associate Judges, and STEADMAN, Senior Judge.

FISHER, Associate Judge:

Petitioner Portia Golding–Alleyne challenges the denial of her claim for workers' compensation benefits. After an evidentiary hearing, the Administrative Law Judge ("ALJ") found that petitioner had "failed to sustain her burden to establish entitlement to a permanent partial award for the left leg." The Compensation Review Board affirmed the ALJ's decision, concluding that it "is supported by substantial evidence of record and is in accordance with applicable law." We affirm.

## I. Statement of Facts

Portia Golding–Alleyne was injured on September 10, 1993, when she slipped and twisted her back in the course of her employment at the Washington Hospital Center. Dr. Bruce Ammerman performed a laminectomy [1] on Ms. Golding–Alleyne in 1996. Since that time she has worked only sporadically (last in 2005, on a part-time basis), and she receives temporary total disability benefits.

Because petitioner Golding–Alleyne was still in severe pain, Dr. Ammerman performed another surgery on her back in May 2003, but she continued to experience back pain after the second procedure. Petitioner continues to receive treatment from Dr. Ammerman and also from Dr. Andre Cernea, a pain management specialist. Since 2003, she has been treated with "[p]hysical therapy, epidural blocks, selective spinal nerve-root blocks, and medication."

In 2005, Ms. Golding–Alleyne fell down some stairs in her home when, she claimed, her "left leg gave out" and tore the rotator cuff in her left shoulder. Dr. Ryan, an orthopedic surgeon, operated on her shoulder in October 2005. The parties agree that there has been no separate, work-related injury to petitioner's left leg.

Ms. Golding–Alleyne filed an Application for Formal Hearing, seeking an award of permanent partial disability benefits in addition to the temporary total disability compensation she currently receives.[2] She requested a "schedule award" equivalent to a 20% loss of her left leg. See D.C.Code § 32–1508(3)(B) (2001).[3] At the

---

**1.** For present purposes, it is sufficient to explain that a laminectomy is an operation to remove the portion of the vertebral bone called the lamina.

**2.** Neither the ALJ nor the CRB reached the question of whether petitioner could receive concurrent benefits. We similarly do not address this issue.

**3.** "A 'schedule award' refers to the formula for compensating permanent partial disability

described in D.C.Code § 32–1508(3)(A)–(S) (2001 & Supp.2008), which lists certain parts of the body." *Washington Metropolitan Area Transit Auth. v. District of Columbia Dep't of Employment Servs.*, 965 A.2d 1, 2 n. 1 (D.C. 2009). The statute states, in relevant part:

In case of disability partial in character but permanent in quality, the compensation shall be 66 2/3% of the employee's average weekly wages ..., and shall be paid to the employee, as follows:

hearing, Ms. Golding–Alleyne and the employer both introduced records from Drs. Ammerman and Ryan, and from therapists at the Physical Therapy and Sports Assessment Center. Petitioner testified about the pain and weakness in her leg, and claimed that she regularly informed all her doctors of the problems with her left leg. She testified that her left leg is "numb ... every day," that it "cramps," and that it "gives out all the time," causing her to fall "four, five times ... per month." Petitioner testified that she continues to receive medication and treatment for her back, leg, and shoulder, and that she goes to physical therapy regularly. Dr. Ammerman did not testify, either in person or by deposition, and the employer did not present a medical expert of its own.

On August 31, 2007, the ALJ issued a Compensation Order denying benefits, relying on the following findings of fact:

> I find that there is no medical evidence that the claimant has ever been diagnosed with or treated for any symptoms, complaints, condition or disability of the left leg. I find that there is no medical evidence that the claimant [ ] experiences problems with her left leg of weakness, instability, giving way or buckling. I find that there is no medical evidence that the claimant has reached maximum medical improvement from a left leg condition. I find that there is no reliable medical evidence that the claimant has a disability of the left leg.

After reviewing the evidence, the ALJ concluded "that the claimant has failed to sustain her burden to establish entitlement to a permanent partial award for the left leg." Petitioner challenges these findings, asserting that they are not supported by substantial evidence.

...
(B) Leg lost, 288 weeks' compensation[.]

## II. Standard of Review

■ "Under the Administrative Procedure Act, this court may overturn a decision of the CRB only if it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *McNeal v. District of Columbia Dep't of Employment Servs.*, 917 A.2d 652, 656 (D.C.2007) (citing D.C.Code § 2–510(a)(3) (2001), and *Clark v. District of Columbia Dep't of Employment Servs.*, 772 A.2d 198, 201 (D.C.2001)). "We affirm an administrative agency decision when (1) the agency made findings of fact on each contested material factual issue, (2) substantial evidence supports each finding, and (3) the agency's conclusions of law flow rationally from its findings of fact." *Georgetown University v. District of Columbia Dep't of Employment Servs.*, 971 A.2d 909, 915 (D.C.2009). We will have more to say later about how our standard of review applies to the somewhat unusual circumstances of this case.

## III. Analysis

### A. The ALJ's Factual Findings Were Supported by Substantial Evidence

Petitioner argues that the ALJ "contradicts himself" in describing the evidence, and that "the CRB erred by determining that the ALJ's decision was based on substantial evidence." We agree that some portions of the ALJ's opinion are confusing. For example, the ALJ noted that there is "no medical evidence that the claimant has ever been diagnosed with or treated for any symptoms ... of the left leg," but he then acknowledged that certain notes from Dr. Ammerman and the physical therapist refer to petitioner's complaints of leg problems. After careful

D.C.Code § 32–1508(3) (2001 & Supp.2009).

examination, we do not consider these statements to be contradictory. The ALJ's strict use of the term "medical evidence" is fairly understood to mean that the only notations in the medical records referring to a problem with the left leg are based on subjective complaints from Ms. Golding–Alleyne herself, recorded by her doctor and therapist. There are no medical test results documenting a permanent impairment to the left leg,[4] nor is there any evidence credited by the ALJ linking the pain in the leg to the work-related back injury. We conclude that the ALJ understood the evidence and that his findings of fact are supported by the record as a whole.

## B. Petitioner Had the Burden of Proof

■ Petitioner had the burden of proving that she was entitled to an award for permanent partial disability. *See Washington Metropolitan Area Transit Auth. v. District of Columbia Dep't of Employment Servs.*, 926 A.2d 140, 149 (D.C.2007) (holding that plaintiff has the burden to prove the nature and extent of his disability). "On the question of the nature and extent of [her] disability, ... the claimant is not entitled to any presumptions." *Id.; see also Dunston v. District of Columbia Dep't of Employment Servs.*, 509 A.2d 109, 111 (D.C.1986) ("Petitioner is entitled to a presumption that his claim is compensable, *i.e.*, that his injury 'arises out of' his employment. He is not entitled to a pre-

sumption that his injury has left him totally and permanently disabled.").

## C. The ALJ Was Not Persuaded by the Treating Physician's Opinion

■ Petitioner relies primarily upon Dr. Ammerman's letter (written to her counsel on June 21, 2006) opining that petitioner had a 20% impairment of her left leg, correctly emphasizing that our case law recognizes a preference for the opinion of the treating physician. *See Short v. District of Columbia Dep't of Employment Servs.*, 723 A.2d 845, 851 (D.C. 1998) ("Under the law of the District of Columbia, there is a preference for the testimony of treating physicians over doctors retained for litigation purposes."). She also argues that because the employer did not present any competing evidence from a medical expert, the ALJ's decision rejecting Dr. Ammerman's opinion is not supported by substantial evidence. Notwithstanding the preference, however, "the hearing examiner [now the ALJ] ... acts as the judge of credibility," *Harris v. District of Columbia Dep't of Employment Servs.*, 746 A.2d 297, 302 (D.C.2000), and "remains free to reject the testimony of a treating physician, [although] he cannot do so without explicitly addressing that testimony and explaining why it is being rejected." *Kralick v. District of Columbia Dep't of Employment Servs.*, 842 A.2d 705, 711 (D.C.2004) (internal citation and quotation marks omitted). If he or she decides to

---

4. In his brief, petitioner's counsel relies on a notation in the physical therapy records for December 19, 2005, that says, "TESTS: +LLE–SLR for adverse neural tension." This means, he asserts, that the therapist found evidence of adverse neural tension while performing a straight leg raise test on petitioner's left leg. There is, however, no explanation in the record as to what the therapist meant by that notation, and we are not inclined to rely on counsel's interpretation of

its meaning. Even if counsel correctly infers its meaning, this notation does not begin to establish that petitioner suffers from a permanent disability of her left leg. Furthermore, there is no indication that petitioner drew the ALJ's attention to this note, either during the hearing or in post-hearing submissions. We do not expect the ALJ to pick out such a short and ambiguous reference from an extensive medical record without the assistance of the parties' counsel.

discount the treating physician's opinion, the ALJ must "set[ ] forth specific and legitimate reasons for doing so." *Olson v. District of Columbia Dep't of Employment Servs.*, 736 A.2d 1032, 1041 (D.C.1999).

When an ALJ does reject the testimony of a treating physician, he normally has found the opinion of an Independent Medical Examiner ("IME") retained by the employer to be more convincing. *See, e.g., Harris*, 746 A.2d at 303; *Canlas v. District of Columbia Dep't of Employment Servs.*, 723 A.2d 1210, 1212 (D.C. 1999); *cf. Ngom v. District of Columbia Dep't of Employment Servs.*, 913 A.2d 1266, 1270 (D.C.2006) (Because the ALJ gave no weight to the opinion of an IME, "[o]n this record, there was no basis for rejecting the opinions of the treating physicians."). Thus far, we have refrained from deciding "whether the hearing examiner must accept the treating physician's opinion where, as in this case, there is no contrary medical opinion. . . ." *Mexicano v. District of Columbia Dep't of Employment Servs.*, 806 A.2d 198, 205 (D.C.2002). However, the judge of credibility may rely on many considerations, *see, e.g., Lincoln Hockey, LLC v. District of Columbia Dep't of Employment Servs.*, 831 A.2d 913, 920 (D.C.2003) (employer may, among other things, challenge factual basis of treating physician's opinion or suggest that doctor is unaware of employee's medical history), and he is not bound to accept the treating physician's *ipse dixit.* We now hold that it is not absolutely necessary for the employer to present a medical expert of its own. When the medical records call into question the basis and reliability of the opinion rendered by the treating physician, the ALJ may be justified in finding that opinion unpersuasive. We conclude that this is such a case.

It is important to remember that petitioner had the burden of proof and that Dr. Ammerman did not testify, either in person or by deposition. Rather, petitioner relied on what the ALJ properly characterized as "sparse medical reports by Dr. Ammerman." The doctor's first explicit reference to any possible leg problem came in his June 21, 2006, letter, addressed to petitioner's lawyer, where he rated petitioner's left leg impairment at 20%.[5] This abrupt pronouncement is cryptic at best, and the ALJ concluded that "the reliability and basis of that medical opinion is questionable." As the ALJ noted, "there is no medical evidence reflected in the reports in evidence that indicate that [prior to June 21, 2006, Dr. Ammerman] was aware of complaints by the claimant of left leg problems or symptoms and no treatment was directed by him regarding her left leg." It therefore is surprising that his first mention of the leg is to conclude that the impairment is permanent.[6]

At oral argument, petitioner's counsel asserted that the impairment to her left leg resulted from radiating pain caused by the back injury, which is why there was no treatment recommended specifically for the leg. This, perhaps, is a logical inference, but it is no substitute for medical opinion *explaining* the causal link. Although Dr. Ammerman's subsequent records mention left side weakness and pain,

---

**5.** The text of this letter states, in its entirety:

As you are aware Portia Golding–Alleyne has been under my care subsequent to 9–10–93 injuries having undergone surgery. She had herniated disc L4–L5 left with left-sided weakness and numbness. I rate this patient's permanent impairment regarding the left lower extremity, as a result of her lumbar injury at 20% including pain, weakness, atrophy and loss endurance and loss of function.

**6.** A note dictated by Dr. Ammerman on May 11, 2006, states that "[t]he patient continues to have lumbar residuals," but it does not explain what he meant by that term.

and he ordered an MRI to investigate these symptoms, these references all took place after he had already announced that the impairment was permanent, and they therefore cannot provide the basis for that initial opinion. Moreover, the subsequent records do little to support or elucidate his conclusory opinion.

We agree with the ALJ that Dr. Ammerman's rating of the patient's disability is questionable, because it does not appear to be based on any previous medical findings or clinical observations. Most importantly for present purposes, Dr. Ammerman does not explain the medical basis for concluding that the impairment to petitioner's leg that he diagnosed in 2006 is causally related to a work injury to the back that occurred in 1993.

▮▮▮ Moreover, it is not enough simply to establish that petitioner has problems (even significant problems) with her left leg. *See Harris,* 746 A.2d at 301 ("[W]e must underscore the difference between an injury and a disability.") "Disability is an economic and not a medical concept." *The Washington Post v. District of Columbia Dep't of Employment Servs.,* 675 A.2d 37, 40 (D.C.1996). The ALJ is not bound to accept the treating physician's medical opinion of whether petitioner has a "disability" as that concept is defined in the Workers' Compensation Act. *See Negussie v. District of Columbia Dep't of Employment Servs.,* 915 A.2d 391, 392 (D.C.2007) ("[A]s used in the Act, 'disability' is an economic and legal concept which should not be confounded with a medical condition....").[7] The ALJ is required by statute to consider all the evidence and to exercise independent judgment in determining whether the claimant has a permanent disability and, if so, the extent of that disability. *Id.* at 398.

Furthermore, petitioner failed to establish the permanency of either the back injury or the leg injury, so linking the two still does not prove that she is entitled to compensation for a permanent partial disability. The ALJ noted that "[t]here is no medical report in evidence ... stating the claimant had reached maximum medical improvement regarding her left leg." Although the ALJ acknowledged that "it is not expressly necessary to utter those magical words," he emphasized that findings of permanent disability "generally follow[ ] a course of treatment before the conclusion that nothing further medically can be done."

### D. The ALJ's Decision Was Not Arbitrary or Capricious

▮▮▮ Petitioner misapprehends the issue before us when she argues that "[i]t was simply not reasonable for the ALJ to conclude that Petitioner failed to present substantial evidence regarding her left leg disability." The claimant had the burden of proof when presenting her case to the ALJ, and she must prove her case by a *preponderance* of the evidence. *See Washington Metropolitan Area Transit Auth.,* 926 A.2d at 149 (holding that plaintiff has the burden to prove the nature and extent of his disability by a preponderance of the evidence); *Director, Office of Workers' Compensation Programs, Dep't of Labor v. Greenwich Collieries,* 512 U.S. 267, 281, 114 S.Ct. 2251, 129 L.Ed.2d 221 (1994)

---

7. *See also Gly Construction Co. v. Davis,* 60 Md.App. 602, 607, 483 A.2d 1330, 1333 (1984) ("To hold that in all cases the [Maryland Workmen's Compensation] Commission or the court is compelled to find an amount of disability that is no greater than the highest medical evaluation and no less than the lowest medical evaluation would impermissibly shift the legal determination of 'disability' to physicians. That result would be in clear contravention of the legislative intent and traditional role of the Commission or court.") (quoted favorably in *Negussie,* 915 A.2d at 398).

(interpreting § 7(c) of the federal APA to mean that "when the evidence is evenly balanced, the benefits claimant must lose."). Merely presenting "substantial evidence" to support her claim is not necessarily enough to carry the burden of persuading the finder of fact. *See Shaw Project Area Comm., Inc. v. District of Columbia Comm'n on Human Rights*, 500 A.2d 251, 255 (D.C.1985) (" 'The substantiality of evidence must take into account whatever in the record fairly detracts from its weight.' " (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 71 S.Ct. 456, 95 L.Ed. 456 (1951)).

Petitioner also protests that the ALJ's ruling was not supported by "substantial evidence" because there was no competing medical evidence on the employer's side of the case. We agree that this is not a typical case where there are medical experts on both sides. However, the ALJ's ruling that petitioner failed to carry her burden of proof was not a finding of fact. Rather, it was a conclusion reached by applying the law to the record presented. It thus is not clear that the "substantial evidence" test governs or, if it does, that it applies in the traditional fashion.

Although this court apparently has not had occasion to address this issue, many others have. *See, e.g., Hickman v. Kellogg, Brown & Root*, 372 Ark. 501, 277 S.W.3d 591, 596 (2008) ("Where the [Workers' Compensation] Commission denies a claim because of the claimant's failure to meet his burden of proof, the substantial-evidence standard of review requires that we affirm the Commission's decision if its opinion displays a substantial basis for the denial of relief."); *Scott v. Steene School Township of Knox County*, 121 Ind.App. 206, 95 N.E.2d 308, 309 (1950) (worker's compensation case; "The finding [that claimant did not sustain his burden of proof] cannot therefore be attacked upon the ground that there was a lack of evidence to support it, as a decision against the party having the burden of proof does not rest upon the quantum of evidence."); *Finance & Administration Cabinet, Dep't of Revenue v. Slagel*, 253 S.W.3d 74, 76 (Ky.Ct.App.2008) ("Where an administrative agency's decision is to deny relief to the party with the burden of proof or persuasion, as was the case here, the issue on appeal is whether the evidence in that party's favor is *so compelling that no reasonable person could have failed to be persuaded by it.*") (emphasis in original); *Douglas v. Board of Trustees of the Maine State Retirement System*, 669 A.2d 177, 179 (Me.1996) ("When an agency concludes that the party with the burden of proof failed to meet that burden, we will reverse that determination only if the record compels a contrary conclusion to the exclusion of any other inference, ... and hence, in the language of the Maine Administrative Procedures Act, the Board's failure to be persuaded was 'arbitrary or capricious.' "); *Dale v. S & S Builders, LLC*, 188 P.3d 554, 561 (Wyo.2008) (workers' compensation claim; "If the hearing examiner determines that the burdened party failed to meet his burden of proof, we will decide whether there is substantial evidence to support the agency's decision to reject the evidence offered by the burdened party by considering whether that conclusion was contrary to the overwhelming weight of the evidence in the record as a whole.").

In this context, as these cases teach, it is neither mandatory nor helpful to search for "substantial evidence," as that concept is normally understood—" 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Georgetown University Hospital v. District of Columbia Dep't of Employment Servs.*, 916 A.2d 149, 151 (D.C.2007) (quoting *Children's Defense Fund v. District of Columbia Dep't of Employment Servs.*, 726 A.2d 1242, 1247 (D.C.1999)). In some

cases, rather, the weakness of the proponent's proof—the lack of evidence—may be enough to defeat her claim. Thus, our duty is to determine whether the ALJ's decision that petitioner failed to carry her burden of proof was "[a]rbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." D.C.Code § 2–510(a)(3)(A) (2001).

■ There was no such infirmity here. Presented with a claim that petitioner suffered from a permanent disability of the left leg, the ALJ obviously found the dearth of evidence of medical analysis and treatment significant, as do we. Petitioner's evidence certainly did not compel the ALJ to conclude that she had carried her burden of proof "to the exclusion of any other inference." *Douglas,* 669 A.2d at 179. Dr. Ammerman's opinion letter was cryptic and conclusory, and the record provided a substantial basis for questioning its reliability. *See Hickman,* 277 S.W.3d at 596 (the "opinion displays a substantial basis for the denial of relief"). Looking at the record as a whole, the ALJ's conclusion that Ms. Golding–Alleyne had failed to prove the existence of a permanent 20% left leg disability was not arbitrary, capricious, or contrary to law. *See Gage v. District of Columbia Bd. of Zoning Adjustment,* 738 A.2d 1219, 1222 (D.C.1999) (finding "no error in the Board's determination that petitioners failed to satisfy their burden of proof").

The judgment of the Compensation Review Board is hereby

*Affirmed.*